## SOUTHERN LANDS, Inc., et al. v. HENDERSON et al.

### No. 770.

District Court, W. D. Louisiana, Lake Charles Division.

Aug. 23, 1938.

836

Modisette & Adams, of Jennings, La., and S. W. Plauche, of Lake Charles, La., for complainants.

McCoy, King & Jones, of Lake Charles, La., for respondents.

DAWKINS, District Judge.

This case was filed in the State court of Calcasieu Parish, by the Southern Lands, Inc., and one William R. Conklin, against the widow and heirs of James M. Henderson, for the specific performance of an alleged option or agreement to convey certain real property and for an accounting of rents and revenues, as well as for the proceeds of certain portions of the property claimed to have been leased, assigned or disposed of by the defendants.

All of the defendants were shown by the petition to be non-residents of this State. They appeared and removed the case to this court on the ground of diverse citizenship. After removal, the first pleading filed by them was on December 2, 1937, a motion to strike articles 7, 9 and 11 of the petition, which had to do with the demand for an accounting.

Thereafter, on January 6, 1938, plaintiffs filed what was termed a re-cast or amended bill to conform to the equity rules. Service was accepted thereon, as well as upon certain interrogatories attached by the defendant, but "reserving all legal exceptions, objections, defenses and delays including our exception to jurisdiction heretofore filed."

Again, on February 16th, defendants "appearing specially for the purpose of excepting to the jurisdiction of the court, and reserving all other rights and defenses of any nature whatsoever" excepted to the amended bill for the reason it "does not allege facts constituting an action of a local nature, as defined by the Acts of Congress, sufficient to vest this court with jurisdiction"; that it did not state facts disclosing or establishing in the plaintiff "a legal or equitable lien or claim of, or to remove any encumbrance, or lien, or cloud upon the title to real or personal property * * * within the district * * *"; that the purpose of the bill is to enforce personal claims, such as the demand for an accounting and as to which

there had been no lawful service. In the alternative, defendants further averred that Articles 29 and 30 of the amended bill and the accompanying interrogatories "are purely personal actions and cannot be prosecuted in this district" and the order of the court for their answering should be vacated. The prayer was in accord with the averments of the motion.

The matter has been submitted upon these motions and pleas of the defendants.

The petition, as filed in the State court, was rather brief, and alleged that the deceased, James M. Henderson, had acquired title to certain described lands in Jefferson Davis Parish, and on or about April 2, 1917, executed an agreement "to re-convey and re-sell the said property to William R. Conklin, upon the payment of $8,133.04, with 7% per annum interest from April 2, 1917, together with taxes and expenses", as per the "original option to purchase" attached to and made part of the petition; that the option had been extended to April 3, 1920; that "said option was continued from time to time, and the amount of indebtedness was reduced from time to time, until on November 7, 1933, the said James M. Henderson executed a further extension * * * to November, 1937", as per agreement likewise attached and made part of the petition; and that the "last extension of the option to buy includes also property in Polk County, Iowa * * *".

Petitioners further alleged that since the death of Henderson, defendants "have had the use and enjoyment of all of the said property and have had the rents and revenues and income therefrom and have disposed of part of the property, and have also executed oil, gas and mineral leases on a part of it and received bonuses and returns therefrom, for all of which they should be required to account" to plaintiffs "* * * to the end that equity may be done and a balance struck to know what, if anything, is now due the defendants before a deed is to be executed pursuant to the agreements as evidenced by Exhibits A and B, hereto attached and made a part hereof".

Further, that Conklin had assigned his rights to the plaintiff corporation; that demands had been made repeatedly upon the said defendants to file an account or render an accounting "and to comply with the obligations contained in said documents, by making a transfer and conveyance of the said properties, both in Iowa and in Louisiana, and that the said defendants have refused and declined to furnish any information or to execute any title or conveyance whatsoever"; that petitioners "are entitled to a specific performance by the defendants of the contract * * * and an accounting, since it is important to determine the amount the plaintiff should pay and tender, if anything, * * * before the deed or deeds are to be executed"; and that plaintiffs "are ready, willing and able to carry out the contract and finish paying for said property when they know the amount due thereon and have been so willing, ready and able all the time during the last two years", as to all of which facts they had repeatedly advised the defendants, but which had been declined and refused. Further, that a curator ad hoc should be appointed to represent defendants.

The prayer was that all of the defendants, by name, be duly "cited and served herewith and ordered to appear and answer this petition"; that "some member of the bar of this court be appointed curator ad hoc to represent all of the said defendants upon whom service should be made", and for judgment "in solido, requiring the said defendants to file forthwith a true and correct account of the relationship existing between the said James M. Henderson and William Randolph Conklin, or their successors, requiring the said defendants to show the amounts received by them for property sold and disposed of, for rents, revenues, bonuses, for oil, gas and mineral leases, crops and all other sources, and ordering a specific performance by the defendants of the contract sued on, and requiring the defendants to execute and deliver unto Southern Lands, Inc. good and sufficient deed, conveying the said properties by quit-claiming all of the right, title and interest the said James M. Henderson or his successors and heirs have in and to the same, upon the payment by the plaintiffs of such amounts, if any, as is found due and owing, and if nothing is found due and owing the defendants, but something is owing the plaintiffs, then there be judgment herein in favor of the plaintiffs against the defendants personally for such amount".

This petition was filed on October 9, 1937. The two exhibits, A and B, attached to said petition, are as follows:

838

Exhibit A.

"Option to Purchase Real Estate.

"I, James M. Henderson, of Des Moines, Polk County, Iowa, in consideration of One Dollar ($1.00) in hand paid by W. R. Conklin of Jefferson Davis Parish, La. hereby give to the said Conklin an option to buy the said Henderson's interest in the following described real-estate, to-wit:

"The Northwest Quarter and the West Half of the Northeast Quarter of Section 23, Township 11, S.R. 4 West, being 240 acres more or less, and the Northwest Quarter of Section 26 and the East Half of the Northeast Quarter of Section 27, Township 11, Range 5 West, being 240 acres more or less, and an undivided one-half interest in the West half of the Northwest Quarter of Section 19, Township 11, S.R. 4, and the Southwest Quarter and the East Half of the Northwest Quarter and West Half of the Northeast quarter of Section 24, Township 11, R. 5 West, and an undivided one-half interest in Lot Four being a certain tract of land lying West of Bayou Nezpique, containing 400 arpents and being the upper one-fourth of Spanish Grant A No. 170, Section 39, Township 8 S.R. 3 West, and an undivided one-half interest in Lots 4 and 5 in Block 23, McFarland's Original Plat of the town of Jennings, and an undivided one-half interest in 200 Arpents of land being the upper half of Lot 3 of the Joseph De Chuets Tract Spanish Grant A No. 170 Section 39, Township 8 S.R. 3 West, and all of the East Half of Block 8 in McFarland's Original plat of the town of Jennings, La.

"For the sum of Eight Thousand One Hundred Thirty-three Dollars and for four cents ($8,133.04) with seven percent interest from April 2, 1917 together with all taxes and expenses that the said Henderson may pay or be obligated for with seven percent interest from time to time the money is so paid. This option is subject to lease to G. D. Longman of a part of said premises for five years.

"This option to expire April 2, 1918, and it being distinctly understood that the said Henderson quit claims only such right, title and interest in the above described property in case said option is exercised by said Conklin as the said Henderson may have in said property by reason of the purchase at the bankruptcy sale, and that he makes no covenants whatever as to said title. If this option is not exercised on or before April 2, 1918 it shall be void and of no effect.

"Dated at Des Moines, Iowa this 2nd day of April, 1917.

"(Signed) James M. Henderson.

"The time of this option is extended to April 3, 192—

"(Signed) James M. Henderson.

"Plaintiffs' Exhibit 'A'."

Plaintiffs' Exhibit B.

"Option to Purchase Real Estate.

"I, James M. Henderson, of Des Moines, Polk County, Iowa, in consideration of one ($1.00) Dollar in hand paid by W. R. Conklin, of Jefferson Davis Parish, Louisiana, I hereby give to the said Conklin an option to buy the said Henderson's interest, in the following described Real Estate for the sum of Eight Thousand One Hundred Thirty-three Dollars and four cents ($8,133.04) with seven (7%) percent interest from the time the money is so paid, and it being distinctly understood that the said Henderson quit claims all his right, title and interest in the herein described property in case the said option is exercised by the said Conklin as the said Henderson may have in said property by reason of the purchase at the bankruptcy sale figured to April 2nd, 1917, and other payments later on the following described real Estate, to-wit:

"The North West Quarter and the West half of North East quarter of Section twenty-three (23) Township Eleven (11), South Range Four (4) West, being two hundred and forty (240) acres more or less, and the North West Quarter of Section twenty-six (26), and the East One Half (½) of the North East quarter of Section Twenty-seven (27), TS–11 South, of Range Five (5) West Louisiana Meridian being Two Hundred Forty (240) Acres more or less and an undivided half interest in the West Half of the North West Quarter of Section Nineteen (19), TS 11 South Range Four (4) West Meridian, and the South West quarter and the East half of the North West Quarter, and West Half of the North East quarter of Section Twenty-four (24), TS–11 South Range Five (5) West and the undivided one half interest (½) in Lots Four (4) and Five (5) Block Twenty-three (23) and all of the East half of Block Eight and all in the McFarlands original Plat of the town of Jennings, Louisiana, this last half (½) of the Four Hundred (400) Acres you sold me together with Sixty-six and two thirds (66-2/3)

acres, being the one-ninth (1/9) interest your wife owned in the Harvey Estate I will sell you that for the same as I paid you for it, $40 (Forty Dollars) per acre, your wife's interest was not in the Bankruptcy Sale.

"In 1930 February 8th you only owed a balance of Two Thousand four hundred sixty-four Dollars and Seven Cents ($2,-464.07) on account of your losing your Iowa land at Tax sale after you saved me the Two Thousand and Forty-five ($2,045) Dollars and Archie House owed me I would have lost only for your help, that Tax Sale you have three (3) years to redeem, money is hard to get, and I am going to give you plenty of time, I extend it to November 1937, I don't want you to fail to pull out.

"Dated Des Moines, Iowa, the 7th day of November, 1933.

"(Signed)   J. M. Henderson.
"Plaintiffs' Exhibit 'B' ".

The re-cast and amended bill, filed January 6, 1938, was an extension and elaboration of the allegations of the one filed in the State court. Plaintiffs also set forth that Conklin, prior to February 13, 1904, had been the owner of record of all the property involved here, situated in Jefferson Davis Parish, Louisiana, and which he had on that date conveyed to Henderson, for the price and sum of $15,-400.00, except 66⅔ acres which had been acquired by Conklin's wife and later transferred to Henderson. That "thereafter" Henderson made an agreement with Conklin "by which he bound himself to re-sell and re-convey" all of said property to Conklin, upon the payment of the "purchase price, plus interest"; that this agreement was renewed from time to time; that some of the property, was sold by Henderson with the approval of Conklin, and the proceeds "were credited and applied" by the said Henderson on the account, or amount to be paid by Conklin for the return and conveyance of the property to Conklin; "that Conklin paid from time to time other moneys on account until April 2, 1917, the total amount thus remaining due the said Henderson * * * was the sum of $8,133.04", at which time Henderson executed the first mentioned document attached to the original petition and quoted above, and "in which the said Henderson admitted the amount then due and owing and recognized the remainder of the property covered by the arrangement and to be transferred and conveyed by Henderson to Conklin, upon the payment of the amount so stated"; that thereafter, Henderson "extended said agreement to January 3, 1920 * * *". Further, that on February 8, 1930, "the amount remaining due Henderson by Conklin on account of the said agreement to purchase or re-purchase the said property, was the sum of $2,464.-07"; and that on November 7, 1933, Henderson executed the second document, Exhibit B, attached to the original petition, agreeing to sell to Conklin what remained of the original property, together with the 66⅔ acres acquired from Mrs. Conklin, "and gave said Conklin until 1937 within which to finish paying for the said property, when the said Henderson bound and obligated himself to re-convey and re-sell to the said Conklin all of the property in the last document fully described * * *". Further, "that on the execution of a new or renewal of the contract of purchase by Henderson, and its delivery to Conklin, the old or prior agreement would be taken up by Henderson, save and except as to the contract dated April 2, 1917 * * *". The amended bill alleged further: "That complainants have no carbon copies or other copies of the other options to purchase or agreements to purchase executed by Henderson and delivered to Conklin, but verily believe and, so believing, allege that such copies were retained by Henderson and they, together with the originals that were returned by Conklin to Henderson, are now in the possession of the defendants or some of them." Further, that about April 10, 1935, the defendant Mrs. Eliza J. Henderson, "was furnished with a copy of the contract of November 7, 1933, * * * and was advised that plaintiffs were ready to carry out the contract according to its terms"; that the said Mrs. Henderson and the other defendants, "refused to recognize the validity of the contract, asserting that the same was not the genuine signature of James M. Henderson, and that they would not be bound by it"; that thereafter, on July 21st and 22nd, 1935, petitioners' attorney, in the City of Des Moines, Iowa, exhibited to the attorney for the defendants, who was authorized to act, "the original contract, together with a photostatic copy thereof, but that the said defendants and their attorney again refused to recognize the contract or to be bound thereby, and asked for time to investigate, which counsel for plaintiffs readily granted"; but that since said time defendants

have continued to refuse to recognize said contract.

Petitioners further alleged that they were entitled to have all of the said property belonging to the said James M. Henderson conveyed to them, free of encumbrances and in default that the court should enter a decree to operate as such conveyance. In the alternative, if plaintiffs were compelled to take title subject to the encumbrances, then the defendant should be condemned to pay plaintiffs the amount they "have suffered as damages for such breaches, etc.", specific reference being made to the dates and places referred to where said transfers and encumbrances were recorded.

The remaining allegations of the petition are in substance the same as in the original, though greatly enlarged and elaborated. Petitioners alleged that they were entitled to the benefits of equity rule 58, in that they were "seeking information which is material, important and relevant, and necessary to complainants' case, and which information and facts are within the knowledge of the defendants; that plaintiffs are unable to obtain the information elsewhere", for which reasons defendants should be ordered to answer the interrogatories attached to the petition.

The prayer is quite lengthy, but the relief sought is in accordance with the allegations of the petition. It asks that "defendants be duly served herewith"; that the attached interrogatories be served and that accounts be adjusted between the parties. If the plaintiffs were found to be due defendants anything they were ready to pay it, and if the latter were adjudged indebted to plaintiffs that there be judgment in their favor; and that defendants be ordered to make title to the land and in default, the court decree the title to belong to plaintiffs. The interrogatories addressed to all of the defendants were, first, to be informed if Mrs. Eliza J. Henderson had not been furnished, on April 10, 1935, with copy of the contract styled "Option to Purchase Real Estate", dated November 7, 1933; that if photostatic copy was not furnished to the attorney for the defendants at Des Moines, Iowa, and the original of said contract shown him on July 21st and 22nd, 1935; that, if all of the defendants had not stoutly denied the genuineness of the signature of James M. Henderson to the original contract and refused to recognize same, calling it a forgery. Defendants were also asked if they did not have in their possession or under their control, carbon copies of the original contract of November 7, 1933, "and some of the prior contracts, of which that was last of the series, or the successor of former contracts involving this property * * *"; if defendants did not have in their possession books and accounts showing the amounts plaintiffs had paid upon said property, and requesting copies and that copies of such accounts be attached to their answers; and finally, that if the alienations of property described in plaintiffs' recast petition "had not resulted in a larger amount or sum in the aggregate than is due and owing upon the contract of September 7, 1933".

Several other interrogatories dealt with an accounting for the several pieces of property alleged to have been sold, leased or otherwise encumbered and described in detail.

## Opinion.

There are certain preliminary questions necessary to be disposed of before reaching the crux of the jurisdictional issue. Plaintiffs contend defendants have waived the objection to the venue or personal jurisdiction, which depended upon their non-residence, (a) by removing the case to this court; (b) by the nature of the motions to dismiss, filed on December 6, 1937 and February 16, 1938; and (c) by acceptance of service on the recast and amended bill.

(a) In general terms, the Act of Congress permits the bringing of a transitory action at either the domicile of the plaintiff or that of the defendant, but, if at the former, then, of course, it is necessary that there should be personal service upon the defendant within the jurisdiction of plaintiff's forum. In ordinary actions, there can be no substituted service or sending of process to another State. In actions of a local nature, or those in which there is a claim to some right in or lien upon real or personal property, the statute provides that the rights of the parties may be determined only in so far as they affect the particular property in question, and no judgment can be rendered having any further effect. Of course, in either instance, if one made a defendant appears and pleads to the merits or raises any other issue which requires the action of the court other than what is necessary to determine the jurisdiction, in the first case,

or the rights in the particular property in the second, then it amounts to a waiver of personal jurisdiction, and the court has power to decide all issues between the parties. However, to hold that by exercising the constitutional and statutory right to remove either class of cases to a Federal court having concurrent jurisdiction with that of the State in which the plaintiff has chosen to file his suit, the defendant waives his immunity from personal judgment, in my opinion, would be to force him into the State court on any question of jurisdiction, when the Federal court to which he is entitled to remove it is 'as competent to decide every issue as the State court. All that I think the decisions, relied upon to support the idea that a removal waives jurisdiction, mean, is that the defendant so acting is estopped to deny that the particular Federal court, as such, has the same power to pass on all issues, including that of jurisdiction, as the State court possessed. De Lima v. Bidwell, 182 U.S. 1, 174, 21 S.Ct. 743, 45 L.Ed. 1041; Wabash Western Railway Co. v. Brow, 164 U.S. 271, 17 S.Ct. 126, 41 L.Ed. 431; Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517. Defendants, in their application for removal made only the usual allegations of diversity of citizenship and did nothing which could be construed as an appearance for other purposes. My view is that the contention that by that act they submitted themselves to the jurisdiction of this court for a personal judgment, is without merit.

(b) In their first pleading filed in this court, the defendants specifically stated that they appeared "for the purpose of excepting to the jurisdiction of this court relative to certain relief prayed for in plaintiffs' petition, and reserving the benefit of all their rights and defenses, plead as follows: * * *". They then moved to strike articles 7, 9 and 11, demanding an accounting, as the same constituted "a personal action and cannot be coupled with an action in rem and this court is without jurisdiction to hear and determine the same." Here again the defendants clearly indicated that, at best, they considered the suit an action in rem, as to which they waived nothing, and viewing it in that light, insisted that since the demand for an accounting was a personal action, it should be stricken from the petition. I see nothing in this amounting to a pleading to the merits, but merely an effort to restrict the issues to such as were applicable to an action in rem.

(c) Equally without merit, I think, is the assertion that by accepting service on the amended bill, defendants subjected themselves to the jurisdiction of this court for all purposes. To say that counsel for either side, in order to save expense of service, etc. cannot waive those formalities for special purposes, where, as here, "all legal exceptions, objections, defenses and delays, *including our exception to jurisdiction heretofore filed*" (italics by the writer of this opinion) are reserved, would be to give to litigation the effect of war without the benefit even of the white flag of truce, when circumstances in the judgment of the parties justified it. I do not believe that defendants lost or waived anything by this qualified acceptance of service.

This brings us to the nature of the proceeding, as affecting jurisdiction, i. e., whether the bill, in its most favorable light, states an action of a local nature, in which substituted process may be used, or the process of this court may be sent into another district for service in connection with the limited jurisdiction to be exercised as against the property.

Undoubtedly, if the petition and exhibits (the option contracts) disclose a right in or to the property described in the bill, such as would support either a lien or a suit for specific performance to compel its transfer, then I think the same would clearly fall within the provisions of the Federal statute with respect to actions of a local nature or in rem. Of course, having been filed originally in the State court, plaintiffs recognized that it could at best be only a proceeding affecting the property within this State, and when the case was removed here and the bill recast, that same theory was carried out by the enlargement of the allegations and the adding to the demand for a conveyance of the property the allegation that it was a proceeding to remove a cloud from the title. Plaintiffs have also charged that, while the documents made part of the petition appear to be mere options, in reality the agreement and understanding with the deceased Henderson was that plaintiffs should have the right, in effect, to repurchase or redeem the property within periods which, from time to time were extended, and that the proceeds of part of it sold by Henderson, as well as moneys paid by plaintiffs were credited

upon the balance due, resulting in a reduction to figures, which are named. The question of whether any proof of this nature can be received is addressed, in the first place, to the issue of whether the petition states a cause of action, and cannot, in my opinion, be determined on a plea to the jurisdiction. If, as contended by defendants, in view of the allegations of the bill, it was necessary nevertheless to allege an acceptance in writing of the option, in order to show a basis for relief, then again I say this concerns the matter of whether or not a cause of action is stated, as to which this court, undoubtedly, has the right to decide, and in doing so, it necessarily exercises jurisdiction.

I can well understand that defendants would not want to file an exception of no cause or right of action until their plea to the jurisdiction has been disposed of; but, with the latter's overruling in this opinion, their rights can be fully preserved by a plea subject thereto. The information and evidence called for by the interrogatories is desired in support of the plaintiffs' demand on the merits. If an exception of no cause of action is sustained, the right to have them answered will be denied, but if not, then it will be time enough to pass upon whether they can be resorted to in an action purely in rem, as contended by the plaintiffs, to determine the extent of the interests of the parties in and to the property.

The plea to the jurisdiction will be overruled and the right to have the interrogatories answered will be deferred until further proceedings herein.

Proper decree should be presented.