## SOUTHERN LANDS, Inc., et al. v. HENDERSON et al.

### No. 770.

District Court, W. D. Louisiana, Lake Charles Division.

Dec. 23, 1938.

Modisette & Adams, of Jennings, La., and S. W. Plauche, of Lake Charles, La., for complainants.

McCoy, King & Jones, of Lake Charles, La., for respondents.

DAWKINS, District Judge.

The nature and extent of the complaint in this case has been stated in the opinion handed down on August 23, 1938, D.C., 24 F.Supp. 835, on the plea to the jurisdiction. Immediately following the overruling of that plea there was filed a motion to dismiss or exception of no cause of action, which was submitted on September 26, 1938, on briefs to be filed. Under date of September 28, 1938, counsel for plaintiffs mailed to the Clerk proposed amendments to the bill and she, in turn, sent them to the Judge, without filing, for the reason that they bore order forms for allowance, which had to be considered by the court. They were returned to the Clerk with the orders signed and with the statement that: "You are directed to file the same but under the practice which I uniformly follow in matters of this kind, the question of allowance will be deferred until it can be called up at the proper time." Copies of this letter were filed on October 3, 1938.

The first proposed amendment sought to add a new paragraph, numbered 31, reading as follows:

"Complainants further show that they accepted the option to purchase real estate sued on in writing and notified the defendants and their attorney, C. B. Hextell, of the acceptance and that this acceptance in writing by plaintiffs was long before the expiration of the time within which they had to exercise said right under the said document, fully copied in Paragraph VIII above; that they repeatedly notified the defendants in writing of their acceptance and willingness to finish paying for the said property and secure a transfer and conveyance, long before November 1, 1937; and that the defendants repeatedly refused to recognize the said contract, both verbally and in writing; and that on or about June 30, 1937, Mrs. Eliza J. Henderson wired W. R. Conklin, one of the plaintiffs, by Western Union, repudiating the said contract and obligation altogether, as follows:

"'I will have nothing to do with alleged option you claim to hold as I know Mr. Henderson did not sign it and I will have nothing to do with it for any and all other reasons and rights and defenses available to me under the law (signed) Eliza J. Henderson.'

and on the same day the said Mrs. Eliza J. Henderson, one of the defendants, wired the Southern Lands, Inc., Jennings, Louisiana, the other plaintiff, as follows:

"'I am informed you claim to be the assignee of an option which Mr. W. R. Conklin claimed to hold Stop I will have nothing to do with this option for I know Mr. Henderson did not sign it and I will have nothing to do with it for any and all other reasons and defenses available to me under the law. (signed) Eliza J. Henderson.'"

The second was to add paragraph 32, reading as follows:

"Complainants further show that the real and true consideration for the said contract designated 'Option to Purchase Real Estate', signed by J. M. Henderson, November 7, 1933, copied in full in Article VIII above, was in fact and in truth not merely the One ($1.00) Dollar consideration recited in the said document but was the difference between $15,400.00, the amount paid by Henderson originally for the property acquired by Henderson that formerly belonged to Conklin, plus the amount which Henderson paid for the 66-⅔ acres known as the Harvey Estate property and plus the amount Henderson paid on account of taxes in Polk County, Iowa, and the sum of $2,464.07, as of date November 7, 1933; and the further consideration that Conklin had, over a long period of time, looked after Henderson's interests in Louisiana and particularly the fact that he had saved Henderson the sum of $2,045.00 in a certain transaction wherein Archie House was involved, as referred to by Henderson in the instrument dated November 7, 1933, and other services which were valuable to Henderson and for which he desired to recompense Conklin.

"Complainants further show that Henderson, from time to time, and at various times between February 13, 1904 and November 7, 1933, had been paid by Conklin on account of the said total purchase price various sums which reduced the amount due and owing Henderson, or that coming to him under the arrangements, from $15,400.00 as it originally stood, plus the two additional amounts for the 66-⅔ acres in the Harvey Estate and the amount paid by Henderson for the taxes in Polk County, Iowa, until, on November 7, 1933, there

was due Henderson the balance of $2,464.-07; and that all of these amounts paid at various times to Henderson were a part of the consideration for the reiteration or repeating of the agreement by which Henderson bound himself originally to make title to the said property to Conklin."

In the meantime, under date of September 30, counsel for respondents mailed to the Clerk a motion, setting forth that "In order for the court to pass upon the motion to dismiss * * * it is necessary that * * * true and correct copies of the alleged acceptances in writing of the option referred to in Article 31" of the first proposed amendment should be filed, and praying accordingly. Order for the production of these documents was attached and the Clerk,—again without filing,—sent the papers to the court. Thereupon the Judge addressed the following letter to all attorneys in the case:

"Two amendments to the Bill of Complaint have been sent to me through the Clerk, with orders prepared for their allowance.

"I had advised the Clerk that under my usual practice, amendments were not allowed until they could be called up contradictorily. However, the Clerk has handed me this morning an application for a rule to produce certain written documents described in the amendments, wherein the filings of the said amendments appear to be recognized without objection. If the defendants have no objection to the amendments, the orders allowing them will be signed and I can then consider the application by the defendants to produce. It would seem that in as much as the documents called for are the basis, in considerable measure, of the demand, they should be produced.

"Please let me hear from each of you as to your desires in the matter of the disposition of the amendments, as well as the prayer for oyer."

Counsel were subsequently heard, briefs were filed and disposition of the matters involved will be made as follows:

### The Amendments.

█ Counsel for respondents have indicated they have no objection to the first amendment if their motion to produce true copies of the alleged acceptances of the option in writing are produced. They do object, however, to the second amendment, upon the following grounds (set forth in written opposition to allowance, filed September 17, 1938): (a) it is an attempt to change the written option alleged upon in the original petition by parole; (b) to show a cause or consideration for the option by parole different to that recited therein; (c) to change said option by parole to establish the right to an accounting; and (d) the amendment alleges facts which amount to an attempt to make the option an entirely different document from that executed by James M. Henderson, deceased, about four months before his death.

Considering the entire bill, including the amendments, it is not possible at this time to say just how far parole may be admitted in support of plaintiff's claims, and that issue will be passed until the trial. It is sufficient to say that I think the second amendment should be allowed also.

### Motion to Produce.

██ The complainant's case depends upon the agreement or option to purchase, and as a general rule, under the Louisiana law, an offer to sell real property must be accepted in writing. The fact that the proposal is in one document and the acceptance is another, or others, does not change the circumstance that these documents form the very basis of plaintiffs' case, and under express provisions of the Louisiana Code of Practice, which I think are applicable at least by analogy in equity, the respondents are entitled to have oyer of the instruments upon which the demands are founded. Plaintiffs will, therefore, be required to file true copies of such acceptances in writing of the option or offer as they have in their possession or are available to them. Until this is done, I think a ruling upon the motion to dismiss or exception of no cause of action, should be deferred.

It is therefore, ordered and decreed that the two amendments adding Articles 31 and 32 to the bill of complaint, be and the same are hereby allowed.

It is further ordered that the plaintiffs furnish to the respondents on or before January 5, 1939, true copies, duly verified, of the alleged acceptances in writing of the option or offer to sell sued upon and described in said amendment or article 31 of the bill of complaint.