DAWKINS, J.
Alleging himself to be a stockholder in the Three Rivers Oil Company, a corporation organized under thé laws of Delaware, with its domicile in Kansas City, Mo., but with an officer for the service of process in the state of Louisiana, plaintiff sued Donald P. Wall and the said company to annul a sale of certain property •made under foreclosure proceedings by the said mortgagee, who was likewise the purchaser, and to annul the said mortgage, upon the ground of fraud and conspiracy. I-Ie alleged that the officers of the defendant company were and are parties to said conspiracy, and could not be induced to take action on behalf of the corporation, and that he was suing for and on behalf of the company, himself, and such other stockholders as might be ‘ interested therein. The other pertinent allegations of the petition are as follows:
(1)That on March 6, 1920, the board of directors, consisting of A. B. Walter, J. P. Koogler, P. T. Wall, and A. H. Walter, attempted to authorize a mortgage, through its president, A. B. Walter, to and in favor of the said Donald P. Wall, a son of the said P. T. Wall, and a party interposed, covering all of the property of said corporation of every kind and nature, all of which was located in the state of Louisiana, being in the parishes of Caddo and Grant, copy of which mortgage was attached to the petition to prove rem ipsam.
(2) That although said mortgage purports to have been authorized by resolution of the board of directors of said company, copy of which is also attached to the petition for the purpose of attacking it, petitioner is informed and believes, and, so believing, avers, that no such resolution was ever passed, and that the pretended action of A. B. Walter as president thereunder was nuil and void.
(3) That petitioner never had any notice of said mortgage until a part of the property had been sold; that he was unable to enjoin said sale, or to induce the officers of said company 'to do so, and that no meeting of the stockholders was ever called to authorize the same.
(4) That instead of there being a necessity for said mortgage on March 6, 1920, there was or should have been, according to figures furnished the stockholders, a large amount of funds in the hands of the company, sufficient to meet all indebtedness and to leave a balance in the treasury.
.(5) That petitioner believes, and, so believing, avers, that there was a cabal and conspiracy between the directors and the said Donald F. Wall to place this fraudulent mortgage upon the property of the company, in order that it might be foreclosed and the property sold, so that said conspirators could obtain the same for themselves, in fraud of the rights of the other stockholders, and that the defendant Donald P. Wall was present at the time and a party to said conspiracy.
(6) That in furtherance of said conspiracy the property was allowed to deteriorate through the. years 1920-21, no effort being made to raise crops, and the personal prop *225 erty was disposed of and dissipated, in order that the said officers might claim that there were no funds to meet its obligations, and that when said mortgage became due, no effort was made by the said officers to pay it off, and that offers of assistance for that purpose from some of the largest stockholders' were refused.
(7) That said company was organized by residents of the state of Missouri, and that neither said company nor its officers have complied with the laws of said state, and that it was organized under the laws of Delaware to avoid the laws' of Missouri, and that a permit to do business in the latter state had' not been procured, as .a result of which every contract of every kind made by said company in said state of Missouri was null, void, and ultra vires.
(8) That the said company likewise had never complied with the laws of the state of Louisiana, in that, in accordance with the requirements of the Constitution, no books had been kept in this state; and, in the alternative, that if the court should hold that the said mortgage was not null and void ab initio for not coniplying with the laws of Missouri, then the same was illegal, null and void for not complying with the laws of the state of Louisiana.
(9) That the officers of said company had applied to the proper officers of the state of Missouri for permission to sell said stock, which was refused, but notwithstanding they had sold same to petitioner and other parties, who acquired in good faith, and are entitled to the protection and safeguards of the law.
(10) That petitioner is informed and believes, and, so believing, avers, that Donald F. Wall never loaned $45,000 to said company as a consideration for said mortgage, and the same is therefore null, fraudulent, and void for this, as well as for the other reasons set forth; "that F. T. Wall is the real party at interest in this affair, and is merely using his said son as a party interposed to carry out said conspiracy.
(11) That since petitioner and his associates discovered the property of the company was going to be sacrificed, they have done every thing in their power to retrieve the same, and to get the officers of the company to work in harmony with them to protect it; but that 'the old officers, as well as those now in charge, were either actively engaged in the said conspiracy, or passively aiding and allowing same; that petitioner and his associates are the minority stockholders, and they and each of them who may see fit to do so are invited to join in this litigation.
(12) That, as another evidence of said conspiracy, one George McOormick had been paid $3,000 of the company’s money, when, if anything was due him, it was a personal debt of the conspirators; that S. Thompson, secretary, is a firm friend of the conspirators and cannot be induced to take action; that John Ü. Dale, who is claimed to be president, is a nephew of the, said A. B. Walter; that W. T. Phillips, who claims to be a director, is an old-time friend and business associate of P. T. Wall; and that J. K. Poster, another supposed director, has been offered a lucrative position as manager of the Bynum plantation (part of the property sold under foreclosure), if the said conspirators should succeed in their undertaking.
(13) That many efforts have been made by stockholders to obtain an inspection of the books and records of the company to determine the condition of its affairs, without avail; that many suits have been filed, which were promptly removed to the federal courts, and the conspirators have in every way sought to hamper and-prevent the stockholders from protecting and conserving its property and affairs, all of these proceedings *228 being set out in detail in the petition; that the books were several times shipped from one state to another to avoid the efforts of said stockholders to obtain an inspection; and that petitioner and said stockholders had never been able to make said inspection or to obtain any information in regard thereto.
Petitioner prayed that a curator ad hoe he appointed to represent Donald F. Wall, a resident of the state of Missouri, and that the said corporation he cited according to law; that on trial there he judgment for the use and benefit of the Three Rivers Oil Company and its stockholders against the said Donald F. Wall, avoiding, canceling, and setting aside the said pretended mortgage, and that same he stricken from the ■records of Grant parish; that the pretended ■sale of the property he likewise annulled .and set aside, and the property restored to the said company for its use and benefit and for the benefit of its stockholders.
Defendants appeared and excepted upon the ground that the lower court was without jurisdiction to annul the final decree of the First district court for Caddo parish, being the order of seizure and sale issued by that court, and ftirther that the said district court of Grant parish was without jurisdiction ratione personse. Later the defendants pleaded the exception of lis pen-dens, in that plaintiff had filed an identical suit to annul the sale of the property made under the same execution in the parish of Caddo, and, in the alternative, asked that the present suit be abated until that in Cad-do parish had been decided. Defendants next pleaded that plaintiff was estopped to prosecute this suit, because he had neither appealed from the said order of executory process nor sought to enjoin the same, and further that the allegations of the petition were contradictory, in that in paragraph 3 it was alleged that the Three Rivers Oil Company was duly organized and doing business, with a domicile in Louisiana; whereas, in paragraphs 11, 12, and 13, he disputed the regularity of its organization and qualification to do business in any foreign state or in the state of Louisiana. Further, because he claimed to have brought this suit on behalf of the Three Rivers Oil Company, and was estopped from attempting to both sue the said company and to represent it. Defendants further moved to strike paragraphs 11, 12, and 13 from the petition for the reason that they contradict the other allegations thereof and that a collateral attack upon the organization of the company could not be made.
The exceptions, save that of estoppel, were overruled, and the latter was referred to the merits.
Reserving all of their exceptions, defendants filed separate answers, which were practically identical, in which all of the essential allegations of the petition were denied, and averred that said mortgage and all proceedings connected therewith were legal and bona fide in every respect, and that its proceeds had been devoted to the purposes of the corporation.
There was judgment for defendants, and plaintiff appeals.
Opinion.
The Plea to the Jurisdiction Ratione Mate-rise et Personse.
[1, 2] The plea to the jurisdiction ratione materise was correctly overruled. Stapleton v. Butterfield, 34 La. Ann. 822. The action to annul the sale and mortgage was a proceeding in rem and for the revendication of real property, and it was not necessary that the court have jurisdiction of the persons of the defendants. C. P. art. 163; La, Dig. vol. 7, p. 310, verbo,“Venue,” § 2.
*229 The Plea of Lis Pendens.
While it is true that a suit identical with the present one, except that it involved other real property, was filed in the parish of Cad-do, where that property was situated, the same was filed subsequently to this one, and since the trial below plaintiffs and defendants have signed a stipulation agreeing that all proceedings in the Caddo court should be stayed until this case is decided, and that the judgment herein shall he final and control all rights involved in both suits. This, it seems, has disposed of the plea of lis pen-dens.
Exception of No Cause of Action.
[3] In support of the exception of no cause of action, defendants contend that, although the petition alleges that plaintiff did not learn of the proceedings for the foreclosure of the mortgage and sale of the property until a part of it had been sold, as to the portion covered by this suit it is alleged that plaintiff did know of said proceedings before the sale, and, having failed either to appeal from the order of seizure and sale or to enjoin the same, he is now barred from and the petition discloses no cause of action for annulling the mortgage and sale; in other words, that the sole remedy in such proceedings is to appeal or enjoin.
We have carefully examined the jurisprudence and. have been unable to find any decision sustaining this view; nor have defendants cited any case so holding where the property had not passed out of the hands of the purchaser at such sale, and who was charged with knowledge of and participation in the fraud and conspiracy, or other nullities or illegalities upon which the same was attacked. On the other hand, our reports are full of cases where such suits have been brought and decided, in which the proceedings and sales under executory process have been assailed after the sale, and the rights of the parties determined by the merits of each case. Stapleton v. Butterfield, 34 La. Ann. 822; Tufts v. Beard, 9 La. Ann. 310; Farrell v. Klumpp, 13 La. Ann. 311; Germaine v. Mallerich, 31 La. Ann. 371; Killelea v. Barrett, 37 La. Ann. 865; Smith v. Brady, 37 La. Ann. 122; Bank v. Jorda, 45 La. Ann. 184, 11 South. 876; Her her v. Thompson, 46 La. Ann. 186, 14 South. 504; Amato v. Ermann, 47 La. Ann. 967, 17 South. 505. It is true that the debtor is given the right to enjoin without bond proceedings under executory process by article 739 of the Code of Practice, upon the several grounds therein enumerated; but neither that article nor any other provision of law that we know of prevents him from attacking subsequently the sale upon the ground of fraud, where the rights of no third person have intervened..^ By resorting to the writ of injunction, he is able to prevent the property falling^ into the hands of innocent third persons, as to whom, otherwise, the order of seizure and sale affords protection. In the present case, however, the petition charges that the defendant, adjudica tee at the sale, was party to the fraud and conspiracy by and with the officers and directors who were charged with the protection of the corporate rights and property; that he (defendant) is a party interposed for some of them, and the effect, taking all of the allegations of the petition as true, is to say that the said officers have attempted illegally and fraudulently to vest in themselves the ownership of its property, and this suit assumes the nature of an action to compel them to restore the same to its true owner. We think, therefore, that the petition clearly discloses a cause of action.
On the Merits.
[4] On the trial below,- the court took the position that none of the acts and doings of the alleged officers and directors of the corn *232 pany were admissible in evidence until it had been shown that the defendant Donald E. Wall had beeVi a party thereto. However, the record shows clearly, even conceding that he was not merely a party interposed for the benefit of the other alleged conspirators, that he was represented at every step by his father, F. T. Wall, who was also acting as an officer of the company, and the knowledge of his agent must be attributed to him. On the other hand, the record discloses that the funds alleged to have been furnished by Donald E. Wall for making the alleged loan upon the mortgage assailed, if actually furnished, arose from the sale of stock in another corporation, which his father, E. T. Wall, had, as a matter of convenience, taken therein in the name of his wife; that it was sold by him after her death, apparently without any probate or succession proceedings, as if it were his own, and this alleged investment in the mortgage made without the knowledge of the said son, who was of full age, until just a few days before the trial of this case in the court below. The circumstances were such as to create a very strong presumption, to say the least, that the defendant Donald E. Wall in reality had no interest in the matter, but' was merely interposed for his father and the other alleged conspirators. However, since we have determined to remand this case, because of the insufficiency of the proof to permit a correct determination at this time, we shall leave this question open with the other issues for decision upon the merits of the ease after it is again tried below.
The record would seem to leave little doubt as to the highly speculative, if not actually fraudulent, character of the actions and operations of the promoters of the defendant company from its very inception. The Red River Land & Oattle Company, a Louisiana corporation, had, on October 19, 1915, bought from the Louisiana Annual Conference of the M. E. Church, South, a piece of farm property known as the Bynum plantation, consisting of some 3,500 acres, paying therefor $40,500, $500 cash and the balance secured by mortgage. On April 10, 1917, the Three Rivers Oil Company was organized under the laws of the state of Delaware, with an authorized capital of 750,000 shares, of the par value of $1 per share. The capital actually subscribed at the time was $1,000. Thereafter, on May 2, 1917, the Red River Land & Cattle Company executed in favor of the said Three Rivers Oil Company, for “one dollar and other valuable considerations,” an oil and gas lease upon the said Bynum plantation, and in which the latter was to commence operations for oil and gas on or before the 1st day of October, 1917, or thereafter to pay “$1 per year” for the failure to do so. ¡May 17, 1917, the said Three Rivers Oil Company applied to the “Blue Sky Commission” of Missouri for permission to sell $500,000' of stock, and therein showed that only $620 in cash had actually been paid in on subscriptions, but that 250,000 shares had been issued in consideration of the oil and gas lease above referred to as having been acquired from the Red River Land & Cattle Company upon the Bynum plantation, in a locality which was entirely of a “wildcat” character. This 250,000 shares was shown to have been issued to individuals as follows : A. B. Walter, 41,666 shares; Charles Dale, 41,667 shares; B. C. Potter, 41,667 shares; E. T. Wall, 41,667 shares; E. Graves, 41,667 shares; and E. J. Geittman, 41,666 shares. Permission to sell said stock was refused by the said Missouri commission because the “showing made was not sufficient to meet the requirements of the law.” The application showed that the domicile of the company was at Kansas City, Mo., and that it had no other local offices.
On June 17, 1917, the said Red River *233 Land & Cattle Company, represented by B. C. Potter as president and A. B. Walter as secretary, sold to the Three Rivers Oil Company, represented by A. B. Walter as president and E. J. Geittman as secretary, the said Bynum plantation, for 250,000 shares of the capital stock of the latter company and the assumption of the vendor’s lien mortgage due the church. We find nothing to show how these individuals acquired, or where they ever paid one cent for, this 250,-000 shares of the defendant company’s stock, which was divided among themselves as above mentioned. But just before this litigation started the outstanding stock had increased to 323,089 shares, or persons other than themselves had apparently paid into the company $73,089. All of the original subscribers to the capital of the corporation, amounting to $1,000, were resident of Wilmington, Eel., and none of the persons later holding the bulk of this stock appeared in its organizations. The Delaware corporators met on the same day that the company was organized and assigned all their stock to A. B. Walter, B. C. Potter, E. J. Geittman,' E. T. Wall, and Charles Dale. These individuals were immediately elected a board of directors, and at the same time authorized the sale of 750,000 shares of stock. Thereafter the transaction above mentioned took place.
The Three Rivers Oil Company, notwithstanding it was refused a permit to sell stock in the state of Missouri, apparently opened an office in Kansas City in that state, and proceeded with the sale of its stock, and the operation of the farm property, etc., in the state of Louisiana. The first minute entry on its minute book that we find, after those showing the organization of the company on April 10, 1917, is the one of March 6, 1920. At this latter meeting, the purported resolution, which the plaintiff attacks in this case, appears to have been adopted, authorizing, the president, A. B. Walter, to borrow the sum of $45,000, and to execute a mortgage upon all of the company’s property to secure the same, and on the same day-the alleged mortgage was executed.
On May 11th, following, the board of directors passed another resolution employing the said E. T. Wall as manager of the company at a salary of $10,000 a year, for a period of two years. About the middle of April, 1921, the suit for the foreclosure of the mortgage was filed, and on May 23d of the same year, A. B. Walter, styling himself as trustee, sent out a letter to the stockholders, showing that, in addition to the mortgage for $45,000, and the one due the church for $40,000, representing the balance of the purchase price of the plantation (the entire price paid the church being $40,500), there was indebtedness due requiring the raising of $30,200, or at the rate of 12^ cents per share on 323,089 shares, with which to pay the same and to furnish a working capital of $10,000, to operate the property, and requested that the stockholders contribute this amount for those purposes. However, this appeal produced no results, and on June 11, 1921, the property in its entirety was adjudicated to Donald F. Wall for $60,000, $40,000 of this bid being represented by the assumption of the mortgage indebtedness due the (Methodist Church.
Numerous efforts were made by the minority stockholders, beginning soon after they had learned of the execution of said mortgage, and running down to a short while before the filing of this suit, including a half dozen suits, one of which was for a receiver, in order to get an inspection of its books and to find out something about its affairs; but the officers of the company, mainly the individuals above named, members of their families, and connections, refused such permission, and shifted the books back and forth from Missouri to Louisiana *235 and from Louisiana to Missouri; some of the suits were removed to the federal courts, and in every conceivable way they apparently sought to evade and deny to the said minority stockholders any of the rights as such, and to which they were clearly entitled under the law, equity, and justice.
The efforts made to prove the purposes for which the proceeds of the mortgage were used were very feeble and unsatisfactory indeed. It consisted mainly of the testimony of some of the witnesses, whose testimony was taken by commission by the plaintiff, that they had been paid claims held against the company, and the proof by. comparison of signatures of certain individuals, mainly those who were charged to have been parties to the conspiracy, by an officer of the Bank at Colfax, who swore to them by comparison with other known signatures; and also the testimony of F. T. Wall as to certain other signatures, and as to the source from which the money was raised to make the loan upon the mortgage. It was not shown that a dollar of the money arising from the mortgage actually went into the treasury of the company. The mortgage notes were three in number, two for $10,000 each, and one for $25,000; all of which went into the hands of F. T. Wall. There is some evidence that one of these for $10,000 went into the possession of the Bank of Colfax, and the other to Mrs.- A. H. Walter, wife of A. B. Walter; but, again, there is no satisfactory proof of the alleged obligations for which they were transferred.As to the one for $25,000, it was shown that two cheeks, one for $3,500 and another for $21,500, were furnished to F. T. Wall, the first going into the hands of the. bank, and the second being deposited in said bank to “the account of Donald F. Wall.”
[5-7] In these circumstances, the plaintiff has certainly raised a very strong presumption of the lack of - the bona fides of the whole transaction, and we think the burden was shifted to the defendants to overcome it by clear and satisfactory proof. The showing made by this record is such as to cast serious doubt and question upon the actions of the several individuals and officers of this company from its very inception, especially where, as here, they are all connected by relationship or otherwise, and we think the widest latitude should be afforded to the minority stockholders to have the whole matter investigated, and that, the rulings of the lower court have had the effect of shutting out evidence which is necessary to a determination of this case. It is true that the plaintiff did not call for the books of the defendant company until the case was with him in rebuttal; but, i-n view of the experiences of the other stockholders, to his knowledge and that of his attorney, who had represented some of them in the several efforts to get an inspection of the books, without success, we think it was the duty of the lower court to have reopened the case for that purpose, and to have allowed a reasonable time for their production and inspection. Where fraud and conspiracy is charged, as in this case, and the showing made is such as is presented here, as above stated, the very widest latitude should be given those who have an interest in getting at the truth.
We shall not attempt to review each ruling upon the admission of the evidence, but shall remand this case, with instructions to the lower court to permit the introduction of any and all evidence which may throw any light upon the bona fides of this whole matter, from its inception to the present.
For the reasons assigned, the judgment appealed from is annulled and set aside, and this case is hereby remanded to the lower court, with instructions to admit all relevant evidence beaming upon the charge of con *237 spiraey, as well as the bona fides and legality of the alleged mortgage and sale, including an examination of all books and records which may throw any light upon the issues of this case; defendants to pay the costs of this appeal; all other costs to await final judgment.