## SADLER v. PENNSYLVANIA REFINING CO.

### No. C. A. 90.

District Court, W. D. South Carolina, Greenville Division.

May 29, 1940.

Mann & Arnold, of Greenville, S. C., and Sam N. Burts, of Spartanburg, S. C., for plaintiff.

Osborne, Butler & Moore, of Spartanburg, S. C., and Brandon & Brandon, of Butler, Pa., for defendant.

HENRY H. WATKINS, District Judge.

The one issue to be decided in this case is that of jurisdiction. The point was made by plaintiff's counsel that this objection had been waived by defendant's answering to the merits, but this contention was not urged in argument and is without merit. Rule 12 of "Civil Procedure of the District Courts of the United States," Subdivision b, 28 U.S.C.A. following section 723c, outlines what constitutes waiver in such cases and the exceptions thereto. The case of Schlaefer v. Schlaefer et al., 112 F.2d 177, decided by the Court of Appeals for the District of Columbia, on February 5, 1940, contains an elaborate discussion of this rule and the distinction to be drawn between cases arising prior to its adoption and those subsequently instituted.

After the suit was instituted defendant first appeared by counsel to demand service of a copy of the complaint. There-

after on November 3, 1939, it filed with the Clerk and served upon plaintiff's counsel, notice that it would on November 4, 1939, file with the Clerk of Court of Common Pleas for Greenville County Petition and Bond for removal of the cause to the United States District Court for the Western District of South Carolina. This notice was accompanied by Petition for Removal and the Bond referred to, and also by notice that the defendant would appear before the Circuit Judge of the State Court on November 11, 1939, for the purpose of making a Motion for Removal. In the said notice last mentioned, as well as the other notices filed, special reservation was made of plaintiff's objection and right to object to the jurisdiction of the Court. On December 8, 1939, in an order consented to by plaintiff's attorney, Honorable C. C. Wyche, Judge of the United States District Court of this District, extended until December 23, 1939, time for answering and for serving and filing Notice of Motions, etc., without any prejudice whatever to the right of defendant to make any objections to the jurisdiction of the Court, such right being fully reserved. Pursuant to such extension, defendant filed its Answer on December 23d in which without making further reservation it alleged for a first defense that the Court is without jurisdiction over its person and, therefore, has no legal authority to proceed further with the cause for certain specified reasons, embracing in brief the facts upon which the present Motion is made, and praying that service of process be vacated and set aside and the action dismissed. A second defense on the merits and also a counter-claim were embraced in the Answer. Thereafter by consent of counsel for both sides a hearing was scheduled before me upon the Motion to Dismiss for lack of jurisdiction. Prior to the enactment of the new rules the courts had generally, if not uniformly, held that by answering to the merits objection to the jurisdiction, although previously made and not withdrawn, was waived. See cases cited in the Schlaefer case supra. We are convinced that one of the principal reasons for Rule 12 was to provide for a quick presentation both of objections and of defenses and to avoid the delay incident to successive motions prolonging the final disposition of the case. Moore's Federal Practice Under the New Rules, Vol. 1, pages 644 to 651; David Devine v. Edwin Oscar Griffenhagen et al., D.C., 31 F.Supp. 624.

The hearing of the Motion before me was begun on March 28, 1940, and because of disputed contentions as to facts both sides concurred in a request that testimony be taken, and this was done resulting in a rather voluminous record involving both oral testimony and numerous exhibits. Two and one half days were spent in Anderson in the taking of testimony with the aid of an expert stenographer, the afternoon of the third day being devoted to argument. In addition to the testimony taken at Anderson, sometime was spent on another day in Greenville at which two witnesses were examined at length, one in particular whose testimony was accompanied by quite a number of additional exhibits. Counsel for both sides have furnished elaborate briefs and reply briefs, citing numerous authorities, all of which I have carefully examined and which I have supplemented from my own investigation. Considerable testimony was taken which only remotely related to the point here at issue and which properly applies to issues which might arise either upon the trial of this case, or upon the trial of other issues which may arise in other proceedings between the defendant and various parties with whom it had dealings in the sale of its products. I think it altogether proper that I should as far as possible avoid comment upon or determination of any issue herein except that which relates solely to the point here involved. For this reason it will be my purpose to elaborate this discussion only to the extent that may be necessary to a clear statement of the questions involved and of my determination thereon. While throughout the progress of the case I was more and more impressed with the view that the defendant was not engaged in the carrying on of an intrastate business in South Carolina in a manner which would subject it to local jurisdiction, nevertheless, the thorough understanding of plaintiff's case, and the able and forcible presentation of it both in testimony and in argument by his counsel, emphasized his contention with such vigor as to require the most careful review and analysis. The decision has not been arrived at any too easily. Upon consideration of the whole matter, however, it has finally appeared to me that the uncertainties with which I was confronted were due more to outside issues than to those involved in this Motion. I find the facts to be as follows: The defendant is a Pennsylvania corporation engaged in the refining, sale and shipment of Pennsylvania

motor oils. On the 18th day of May 1937 it executed a contract with O. F. Taylor of Atlanta, Georgia, therein designated as "Broker" in which it was agreed, inter alia:

"That the broker shall be given by the refiner the right to sell their branded and non-branded petroleum products in the States of Georgia, Southern Carolina, Alabama and Tennessee. The refiner further agrees to refer all inquiries received by them from customers within this territory to the broker for his solicitation. The branded lines of merchandise of the refiner which consists of Penn-Drake and Penreco brands shall be sold by the broker to regularly established jobbers at the refiner's regular jobbers' prices. * * * All prices, unless otherwise specified are f. o. b. our refineries at either Karns City or Titusville, our option. * * *

"The refiner reserves the right to pass on all credit, and, of course, refuse to ship any account secured by the broker, if, in their judgment, they are not worthy of credit, and on such accounts the refiner has the right to demand sight draft shipments or partial payment covering freight in advance. * * *

"It is agreed by both parties that this agreement shall in no wise be construed as principal and agent, and the refiner shall not be bound by any promises or acts of the broker unless agreed upon in writing. Therefore, any orders taken by the broker in the name of the refiner must be accepted in writing by the refiner."

The plaintiff's first communication with the defendant was by letter dated March 4, 1939, in which he sought representation of the defendant. On March 8th defendant replied to this letter saying, "Although we are unable to do anything with you direct, we believe our representative, Mr. O. F. Taylor of Atlanta, Georgia, may be able to work something out with you and we are referring your letter to him." Pursuant to this reference, Taylor wrote Sadler on March 15th and several letters and interviews between them followed. Considerable testimony was adduced as to what passed between Taylor and Sadler and as to advancements made by the former to the latter. This, however, was only incidental, if at all material, to the point here at issue. It is sufficient to say that Sadler became actively interested in soliciting business pursuant to his agreement with Taylor, and on or about April 11th in connection with Taylor he had an interview with H. Y. Kerns of Greenville, South Carolina, trading under the name of Kerns Oil Company. In consequence of this, three orders were prepared directed to the defendant for the shipment of what was intended to be one carload of oil, but shipment was really made in two cars. One of these orders purported to be signed in pencil "H. Y. Kerns," but in his testimony Mr. Kerns denies that he signed this order and the proof fails to show that he did. The other two orders were signed by O. F. Taylor and each marked accepted under the signature of Kerns Oil Company by W. F. Sadler, and there is no dispute that the signature of Kerns Oil Company is in the handwriting of W. F. Sadler. In one of the orders so signed by Sadler, in the name of Kerns Oil Company, the terms of sale were set out as follows: "Terms 30–60–90 days. On receipt of car, credit invoice deliveries to other jobbers fob Greenville, S. C." In the other two purported orders the terms were set out as 30–60–90 days, that purporting to be signed by Kerns adding "from May 1st." It appears that these orders were not received by defendant until sometime later. After receipt and upon examination, Mr. Hindman, officer in charge of the matter, on behalf of the defendant called up Taylor by 'phone and stated to him that the company would not honor the order upon the terms providing, "On receipt of car credit invoices to other jobbers, fob Greenville, S. C.," whereupon Taylor stated that it would be all right with Kerns to eliminate this provision. In this connection, the evidence shows that previously Taylor had in a few instances in some other states procured shipments to be made on a consignment basis, but the practice had been disapproved by the company and he had been advised that such practice would not be further permitted. Both Taylor and Hindman testified to the above facts and there was no denial of them by Sadler or anyone else. Kerns, however, stated that he was not informed of the conversation between Taylor and Hindman. As a result of this understanding with Taylor and after investigation and approval of Kerns' credit, the company acknowledged the order under date of May 23, 1939, which acknowledgment, however, Kerns says he did not receive until after the arrival and unloading of the cars. The cars were actually shipped on May 25th, and

both the acknowledgment, or trade acceptance, and the invoice which Kerns admits receiving shortly after the arrival and unloading of the cars stated the terms to be "30–60–90 F. T. A."—the latter initials standing for Federal Trade Acceptance; so that it appears without contradiction that the acceptance by the company and the invoice covering the shipment showed a straight sale without any provision for or reference to crediting of invoice deliveries to other jobbers f.o.b. Greenville. Mr. Kerns states that he understood when the order was sent in that it was subject to the approval or acceptance of the defendant. When the shipment arrived it was found that it was sent freight collect and Mr. Kerns stated that this was not in accordance with his understanding and he refused to pay the freight, and upon being advised of this the defendant itself paid the freight so that delivery could be made. I am not disposed to attach so much importance to this fact for the reason that both the acceptance and the invoice forwarded by the company showed that the shipment was made f.o.b. Karns City, freight allowed to Greenville, S. C.

It appears further in the evidence that Kerns on July 1, 1939, signed an order embraced upon two sheets for another shipment of oil, "Terms 30 60 90 days Credit invoice deliveries to other jobbers." This order was taken by Sadler and received by the defendant sometime later but it was not honored, and the evidence regarding it is irrelevant unless remotely to indicate defendant's rejection of these terms.

Kerns testified that when the orders were prepared he had an agreement with Taylor and Sadler to the effect that the oil should be shipped for storage in his warehouse for which storage he was to be paid certain warehouse charges and that the shipment was not to be, and was not, upon a purchase agreement. He further stated that he was to have the privilege of using such amount of the oil as he might need in his own business and to pay for it at the prices outlined, and that the rest of the oil was to be handled as a consigned stock for sale and delivery to various parties upon orders to be procured by Taylor and Sadler. It is not contended, however, that any such agreement was communicated to the company until sometime after the shipment arrived in Greenville and was accepted by Kerns. I find therefore, that the evidence fails to show that the company in making

the shipment had any advice of such an agreement. Furthermore, the uncontradicted proof shows conclusively that the company rejected the provision for shipping on consignment and that the order as finally accepted under the company's right to accept or reject, as provided in the written contract with Taylor, was for an outright sale only. Kerns admitted in his testimony that he understood that the company had this right of acceptance or rejection. The evidence shows, however, that Taylor and Sadler, particularly the latter, assured Kerns that they would be able to procure, and would procure, purchasers for all of the oil which might not be desired to be used or sold by Kerns in his own business. After sometime the defendant was advised of the situation through an interview with Taylor, who confessed that he had, as he termed it, put it over on the company. Under his contract with the defendant Taylor was not entitled to receive his commission unless and until payment for the various amounts of oil was actually received by the defendant. And since Sadler's receipt of any share of the commission, or of compensation, was dependent entirely upon his contract with Taylor, the same restrictions prevailed as to him. In order, therefore, to relieve the situation it was greatly to the interest of both of them that some method should be devised by which all oil on hand would be finally disposed of and settlement made therefor. In order to accomplish this, an agreement was reached by which they were to procure purchasers for the undisposed of oil either for cash or to customers whose credit should be approved by the defendant. When such customers were procured shipments would be made to them by Kerns and thereupon the amount of each sale was to be credited by defendant to Kerns' account. The shipments were made from Kerns' warehouse out of the stock on hand, by trucks owned by Kerns and operated under the name of Kerns Transfer Company, and it is his contention that these credits were to be only for the amount of oil delivered from his warehouse and not upon the sales account held by the company against him. I am satisfied, however, that the company's consent was intended only to aid in the disposition of this stock and that the substitution was merely a substitution of accounts in order to relieve the situation. The evidence shows that the company had obligated itself to an uncondi-

tional sale under which Kerns had the right to hold and dispose of all of this stock at any price which he might be able to obtain, whether the same, or greater, or less, than that named in the original invoice. It is true that collections were made upon these accounts by Taylor and Sadler and in some instances by Kerns in the State of South Carolina, and that the defendant urged that collections be pressed. All payments, however, were to be forwarded to the company at its home office and I am satisfied that the defendant was not thereby engaged in business in South Carolina under any interpretation laid down by the courts of last authority.

It appears in evidence that another carload of oil was shipped to L. L. Yancey of Greenville, on July 20, 1939, upon an order written by W. F. Sadler, bearing date June 29, 1939, endorsement of acceptance by purchaser being in Sadler's handwriting as follows: "Given me by L. L. Yancey." This order embraced no reference whatever to any consignment. Its terms were stated to be 30–60–90 days F. T. A.—So. Car. National Bank, Anderson, S. C. This order was forwarded through Taylor and shipped and billed as a straight sale and there is no evidence that the company had any information at the time or until weeks afterwards that Yancey claimed that the shipment was upon consignment under agreement with Taylor and Sadler. On the contrary, it appears that the company acted in good faith in shipping as a contract of sale, and whether Yancey may or may not make good his contention of non-liability eventually because he never signed the order is not involved in the issue here presented. Certainly there is nothing to show that the company had any intention of shipping on consignment at the time that delivery was made. What has been said as to the subsequent handling of the oil in the Kerns' case applies with equal force here.

Considerable evidence was introduced relating to certain other shipments from Charlotte and Atlanta and to receipts of shipments at points in South Carolina and the handling of same after receipt. But I find nothing in those cases to lead to a different conclusion from that hereinbefore set out. I have carefully gone over the correspondence introduced in evidence, including correspondence between the defendant and Sadler, and it is there made plain that from beginning to end the defendant was unwilling to establish any custom of doing a local business in this State, and that it particularly objected to the situation which had been created without its knowledge by Taylor and Sadler. It is significant that Sadler did not go on the stand to deny orally any of the statements made by either Taylor or Hindman.

On the whole evidence it must be held that the defendant was not at any time within the period in question so engaged in business in South Carolina as to render it subject to the jurisdiction of the local courts.

The attempted service of defendant herein was made upon O. F. Taylor under the claim that he was at the time its agent within the purview of Section 434 of the South Carolina Code of Civil Procedure. As above stated Taylor was and is a resident of Atlanta, Georgia, and there is nothing in the record to show what was the occasion of his visit to South Carolina when he was so served. The defendant has not had at any time a designated place of business in South Carolina, nor has it complied, or attempted to comply, with the requirements of Section 7765 of the South Carolina Code of Civil Procedure by applying for permission to do business within the state and by filing with the Secretary of State a written stipulation designating some place within the state as its principal place of business, or location of said corporation in this state, "at which all legal papers may be served * * * by delivery of same to any officer, agent or employee of said corporation, found therein; or if none such be found therein, then by leaving copies of the same on the premises." It will be observed that the foregoing provision of the statute relates only to instances in which foreign corporations have entered the state for the purpose of carrying on a local business and have designated a principal place of business within the state where service may be made by delivery not only to officers and agents but also to any employee. We think it altogether clear that the defendant herein did not comply with this statute for the reason that it never intended to engage in a local business. As to it, therefore, the service if made at all had to be made under the provisions of Section 434 of the Code which prior to 1899 in designating what agents could be served provided only for resident agents. In that year, however, the statute was changed to read, "or any agent

thereof." Numerous decisions have been handed down by the State Supreme Court defining what constitutes an agent and the authority necessary to be vested in him under the original statute as well as under the amendment. These decisions are generally in accord with the decisions of the Supreme Court of the United States and other courts. When and if construed to be in conflict with the decisions of the United States Supreme Court we must hold that they cannot prevail. In the case of Mechanical Appliance Co. v. Castleman, 215 U.S. 437, 30 S.Ct. 125, 128, 54 L.Ed. 272, affirming Wabash W. Ry. v. Brow, 164 U.S. 271, 278, 17 S.Ct. 126, 41 L.Ed. 431, it is held that, "It is well settled that, after removal from the state to the Federal court, the moving party has a right to the opinion of the Federal court, not only upon the question of the merits of the case, but as to the validity of the service of process." See, also, Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517; S. B. McMaster, Inc. v. Chevrolet Motor Co., D.C., 3 F.2d 469; 3 Cyc. of Federal Procedure, Sec. 744, pages 362, 363. In the case of Wiggins & Sons, Inc., v. Ford Motor Co. 181 S.C. 171, 186 S.E. 272, 273, the able opinion by Circuit Judge Shipp, affirmed by the Supreme Court says: "Counsel for both sides agree that, in determining whether a foreign corporation is doing business within a state to such an extent as to make it amenable to state jurisdiction, the federal authorities are controlling, because of the question of 'due process,' 'equal protection,' and 'interstate commerce' involved," citing a number of authorities including the case of State v. W. T. Rawleigh Co., 172 S.C. 415, 174 S.E. 385. In the case last cited, the well considered opinion of Circuit Judge Oxner was affirmed by the State Supreme Court. In discussing the two questions of a foreign corporation doing business within the state and the service of process upon such agent of corporation, Judge Oxner said, 172 S.C. 415, 174 S.E. at page 391: "The United States Supreme Court is the final arbiter upon both of these questions," citing numerous authorities.

We had occasion to make a full investigation of the law in the case of Rayon Products Corporation v. Tubize Chattillon Corporation et al.[1] While the facts developed in that case were different from those here presented, in many respects the same principles of law were controlling and our views were fully set out in the opinion which was filed with the Clerk of this Court on August 10, 1931. In some respects the plaintiff therein presented a stronger case to sustain service than is here presented, but the service was set aside and held invalid upon the numerous authorities therein cited.

It would too greatly prolong this opinion to attempt an analysis of the numerous cases cited by plaintiff's counsel in support of his contention that the defendant was engaged in business in this state, and that Taylor was its agent upon whom service could be made. It is sufficient to say that in all cases from and extending back of International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and Id., 234 U.S. 589, 34 S.Ct. 947, 58 L.Ed. 1484, on down to the very recent case of Eastern Livestock Cooperative Marketing Ass'n, Inc., v. Dickenson, 4 Cir., 107 F.2d 116, the facts justified the conclusion that the corporations were engaged in a local business and that the party served was an authorized agent. We have already found as a fact that neither of these conditions existed in the instant case. In People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537, the court said: "The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." See, also, Consolidated Textile Corporation v. Gregory, Judge, 289 U.S. 85, 89, 53 S.Ct. 529, 77 L.Ed. 1047. In the case of Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, at page 610, 19 S.Ct. 308, at page 311, 43 L.Ed. 569, the court said: "In a suit where no property of a corporation is within the state, and the judgment sought is a personal one, it is a material inquiry to ascertain whether the foreign corporation is engaged in doing business within the state (Goldey v. Morning News, 156 U.S. 518 [519], 15 S.Ct. 559 [39 L.Ed. 517]; Merchants' Mfg. Co. v. Grand Trunk Railway Co. [C.C.], 13 F. 358); and, if so, the service of process must be upon some agent so far representing the corporation

[1] No opinion for publication.

in the state that he may properly be held in law an agent to receive such process in behalf of the corporation."

The South Carolina cases are generally in full accord with the views herein expressed. We particularly call attention to the Wiggins case and the Rawleigh case, supra, and the numerous authorities therein cited on this subject. See, also, Taylor v. News & Courier Co., 156 S.C. 537, 153 S.E. 571.

In accordance with the views hereinbefore expressed, the defendant's motion to set aside the attempted service of defendant must be granted, and it is so ordered.