## GRIFFITH v. ENOCHS.

No. 495—Civ. A.

District Court, W. D. Louisiana, Opelousas Division.

Feb. 16, 1942.

O. E. Guillory, of Ville Platte, La., Plauche & Stockwell, of Lake Charles, La., and Seth Lewis, of Opelousas, La., for plaintiff.

White, Holloman & White, of Alexandria, La., and Marc Dupuy and Couvillon & Couvillon, all of Marksville, La., for defendant.

PORTERIE, District Judge.

The plaintiff, a resident of Evangeline Parish, Louisiana, brought this suit in the Twenty-Seventh Judicial District Court for St. Landry Parish, Louisiana, against the defendant, a citizen and resident of the state of Arizona, describing in his petition to the state court what purports to be an action to declare the nullity of a certain ex parte judgment of that court. The petition declared "that the said undivided one-half interest" in certain described land "is of a value in excess of two thousand dollars."

The defendant, alleging diversity of citizenship and jurisdictional amount, petitioned and secured the order of the state court, and the case was removed to the federal court. The defendant then filed a motion to dismiss on the ground of want of jurisdiction of subject matter and of person. There are several alternative requests which, because of the decision reached herein, need not be itemized.

Concurrently, the plaintiff filed a motion to remand, alleging two grounds, to wit: that plaintiff's suit is a probate proceeding and the federal court is without juris-

diction, and secondly, that the amount in dispute does not exceed the sum of $3,000.

At the hearing, which was made a joint one covering both the motion to dismiss and the motion to remand, it was argued, followed by briefs, that there was another reason for remanding the case to the state court and that was that the suit originally in the state court is purely, simply and only an action in nullity of a judgment of that state court.

We should outline the evidence submitted at the joint trial of the motions.

(a) By both sides was filed, as a mutual exhibit, an oil, gas and mineral lease by and between Theodore M. Enochs, sole heir of Theodore J. Enochs, deceased, a resident of Bixbee, Arizona, lessor, granting, leasing and letting unto Amerada Petroleum Corporation the exclusive right to enter upon and use, for the exploration and production of oil, gas, etc., the lands involved herein, situated in Avoyelles Parish; the rental per acre therein being $2.50, for a period of five years, with an immediate bonus of $1,000 in addition to the yearly rental per acre; also there is the usual condition of the stoppage of yearly rental payment per acre in the case of oil, gas or any other mineral being found, in which contingency the basic provision, as is common to such lease agreements, applies:

"6. The royalties to be paid by Lessee are: (a) on oil, one-eighth (1/8) of that produced and saved from the land and not used for fuel in conducting operations on the property or in treating said oil to make it marketable; (b) one-eighth (1/8) of the market value of the gas sold or used by the Lessee in operations not connected with the land leased; (c) one-eighth (1/8) of the value at the mouth of the well of casing-head gas * * *. Oil royalties shall be delivered to Lessor free of expense at Lessor's option in tanks furnished by Lessor at the well or the Lessor's credit in any pipe line connected therewith. In the event Lessor does not furnish tanks for such royalty oil and no pipe line is connected with the well, Lessee may sell Lessor's royalty oil at the best market price obtainable and pay Lessor the price received F.O.B. the leased property, less any severance or production tax imposed thereon."

(b) By plaintiff, a certified copy of the proceedings of the Probate Docket (No. 1259) of the 13th Judicial District Court, parish of Evangeline, State of Louisiana, in the "Estate of Isaac Griffith, I." consisting of the petition for homologation of inventory, the evidence of appointment of appraisers, the oath of the appraisers, the copy of the inventory and appraisement of property then made by the appraisers, which shows a valuation of the property involved herein at $1,600.

(c) By plaintiff, a certificate from the Assessor for the parish of Avoyelles to the effect that 80 acres of the property involved herein is assessed for state and parish taxation purposes at the sum of $300 (inference to be made: the 160 acres would be assessed, excluding any and all oil, gas and mineral rights, at $600).

(d) By plaintiff, a certificate from the same assessor to the effect that the movable property under the name of Amerada Petroleum Corporation, Tulsa, Oklahoma, situated on the 160 acres involved herein, comprising oil tanks, oil wells and equipment, is assessed in the sum of $75,470.

(e) By defendant, the affidavit of one L. M. Myles, Chief Clerk of Amerada Petroleum Corporation at Bunkie, Louisiana, to the effect that affiant is familiar with the Eola oil field and that the property at issue herein is a part of the Eola oil field; that he knows there are nine producing oil wells thereon, the first having been brought on August 24, 1939; and, after affirming details serving as a basis for computation, affiant arrives at the result in the affidavit that the one-eighth of one-half royalty of the production of this well, which represents the share to follow the ownership to the property involved in this suit, is worth $33,338.16 for twelve months; further, that the "total run from said nine wells, from the respective dates on which they were brought into production up to and inclusive of June 30, 1941, is 747,763.39 barrels, which has sold for $856,491.65, one-sixteenth of which is $53,530.72; that based on said figures of actual production, the undivided one-half interest in said NW¼ of Sec. 6, T. 2 S., R. 3 E., with the one-eighth royalty on the oil production therefrom, is worth far in excess of $3,000.00; that the price of gas is not included in said figures; that based on the present monthly production and price, the undivided one-half interest in said land, together with the one-eighth royalty thereon, is worth far more than $3,000.00 per annum."

Mr. Myles continues: "Affiant further states that all the royalties on said production from said land are being held in suspense until it is determined who owns the land from which said oil is being produced." (Dated July 16, 1941.)

■ The superficial value of the property (180 acres) for agricultural purposes is perhaps under $3,000, since the property is swamp land and not suitable for farming. The state looks to severance taxes on the minerals after being reduced to possession above ground, and leaves out the ad valorem feature of the minerals under ground (Constitution of Louisiana, Article X, Sec. 21). The tax assessor's estimate of $600 as value of the property is purely for the land superficially, as if there were no oil under it, whether being brought to the surface or not.

Disregarding the value of this property as far as oil production be concerned, in other words, as if this case were before us without oil having been discovered, we should still have to consider its rental value. We should ascertain what invested capital would be necessary to bring the yearly revenue of $400 (160 acres at $2.50 per acre). Considering money to be worth the quite satisfactory rate of 4%, it would take $10,000 of capital to yield $400 per year. Using as one factor the principal of $3,000 (amount necessary for jurisdiction) and the annual return of $400 as the other factor, the rate of interest is 13⅓%. For a similar computation, see Western & Atlantic R. R. v. Railroad Comm. of Georgia et al., 261 U.S. 264, 267, 43 S.Ct. 252, 67 L.Ed. 645. It would seem but just and reasonable to assume that the value of this property is several times $3,000.

We have excluded in this computation the clear bonus of $1,000, which is the equivalent of another $200 per year for the period of the lease, five years. In other words, if the $400 per year rental support by a multiple margin the jurisdiction, the $1,-000 bonus supports it 50% more with the same multiple factor of safety, since $200 per year is the half of the $400 per year— the basis of our first computation.

■ This court, additionally, must recognize the mineral value of the land which is shown to be under lease of record, and to have nine producing oil wells thereon, developed since August, 1939; must consider that the actual worth of the oil taken out in the month of July, 1941 was $44,450.90, and the one-eighth of one-half

of the royalty therein (which is to go to the owner-litigant of this suit) is, for the month of July, $2,778.18, and that for twelve months this amount alone, excluding previous accumulations of eight months, reaches the sum of $33,338.16.

The value in money of this one-eighth of the oil is the amount of rent due. See Shell Petroleum Corp. v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785, from which we quote: "It is well settled that the paying of a royalty, under a mineral lease, is the paying of rent. Spence v. Lucas, 138 La. 763, 70 So. 796; Logan v. State Gravel Co., 158 La. 105, 103 So. 526; Board of Com'rs of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264." 170 So. at page 791.

Additionally again we have as an item of evidence that all money from royalties accumulated from the land at issue are being held in suspense until it is determined who owns the land. (Mr. Myles' affidavit, previously quoted.) Though the prayer of the petition does not ask for a decree disposing of this money in escrow, it is clear that, immediately after the judgment decreeing title to the land, would follow the delivery of the money held in suspense. This is so without more ado—no suit to be filed, no order of court to be sought. And it would be so under the Civil Code of Louisiana even without the provisions of Louisiana Act No. 64 of 1934.

■ The federal courts have interpreted the significance of like or similar facts in determining the "value of the matter in controversy" under Section 24 of the Judicial Code, 28 U.S.C.A. § 41. The case of Elliott v. Empire Natural Gas Co., 8 Cir., 4 F.2d 493, is quite rehearsive of the jurisprudence. We quote the most pertinent paragraph: "Many cases decided in the courts affect others indirectly who are not parties thereto. The alleged rights of appellees as against others who are not parties to the suit are not in dispute in this case, within the meaning of the statute. We think 'the value of the matter in controversy,' as the term is used in Section 24 of the Judicial Code, means the pecuniary result to either party which the judgment entered in the case would directly produce, either at once or in the future. Where the right (the value of which is taken as the test) exists in favor of many persons as against one, or

356

in favor of one as against many, and in its nature is separable, then the separable values cannot be added together to make the jurisdictional sum, and the separable value furnishes the jurisdictional test. These propositions are abundantly sustained by decisions of the federal courts." 4 F.2d at page 497.

There can be no question that in this case (a) the result of the judgment "means the pecuniary result to either party which the judgment entered in the case would directly produce, either at once or in the future", and (b) the title to the land and the collection of the rentals derived from the land or the delivery of the money held in suspense coming from the royalty, are not by nature nor under Louisiana law (to be shown later) separable; and no third party is involved, as the judgment will decide which of the two litigants owns all of it.

The language quoted from the case of Elliott v. Empire Natural Gas Co., supra, has received favorable mention, notably in the following cases: Jensen v. New York Life Ins. Co., 8 Cir., 50 F.2d 512, 514; Ronzio et al. v. Denver & R.G.W.R. Co., 10 Cir., 116 F.2d 604, 606; Crockett v. Overfield, D.C., 22 F.Supp. 915, 917.

In Smith v. Adams, 1889, 130 U.S. 167, 175, 9 S.Ct. 566, 569, 32 L.Ed. 895, the Supreme Court of the United States made the following observation: " * * * It is conceded that the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment."

And in Wheless v. St. Louis et al., 1901, 180 U.S. 379, 382, 21 S.Ct. 402, 403, 45 L. Ed. 583, the same court said: " * * * The 'matter in dispute' * * * is * * * the pecuniary consequence to the individual party, dependent on the litigation * * *."

■ Under our civil law there can be no separate corporeal mineral estate. Louisiana Civil Code, Arts. 505, 533, 646, 647. We quote from Wemple v. Nabors Oil & Gas Co. et al., 154 La. 483, 97 So. 666, 668, 669:

"It will thus be seen: That this court has always emphatically rejected the doctrine that there can be in this state any estate in lands other than (1) simple owner-ship of the soil; and (2) servitude thereon (including usufruct). That no individual is free to establish any other estate therein, whether by will or by contract. That such inhibition against the establishment of novel estates and new tenures is conformable to general law, and a matter of high public policy.

"And we therefore conclude that there is in this state no such estate in lands as a corporeal 'mineral estate,' distinct from and independent of the surface estate; that the so-called 'mineral estate' by whatever term described, or however acquired or reserved, is a mere servitude upon the land in which the minerals lie, giving only the right to extract such minerals and appropriate them."

The earlier extended consideration and mature study of the civil law principles underlying the definite conclusions of the Wemple case are found in the celebrated case of Frost-Johnson Lbr. Co. v. Salling's Heirs, 150 La. 756, 91 So. 207.

Except for the development of the Eola oil field and the discovery of oil upon the very acres at issue, this action would never have arisen. It would offend the judicial mind to rule technically that the amount at issue here is merely the superficial value of the land free of the value of the oil that is actually pouring from it at this very time of suit.

■ Consequently, the case was properly removed to this court, as diversity of citizenship is patent and the amount involved is undebatably above the sum of $3,000.

We find ourselves, therefore, with jurisdiction. After consideration of the pleadings, particularly the petition of plaintiff in the state court, rehearsing in mind the oral arguments, reading the briefs submitted, and particularly the cases cited in support of the points made, the court has reached the conclusion that the motion to dismiss should be sustained. We shall now proceed to give the rationale for this conclusion, and in doing so it will become evident how all other points urged become irrelevant or inapplicable.

Analysis of the petition to the state court discloses that the petition has for its pretended purpose the declaration of the nullity of an ex parte judgment and has for its real purpose the testing of two supposedly conflicting titles to the property involved, or what is called in the civil (Louisiana) law

an action in revendication of title to real property.

■ Our authority for and consequent duty to make this analysis is directed by the following cases: Lambert Run Coal Co. v. Baltimore & O. R. Co., 258 U.S. 377, 42 S.Ct. 349, 351, 66 L.Ed. 671; Courtney v. Pradt, 196 U.S. 89, 92, 25 S.Ct. 208, 49 L.Ed. 398; American Well Works v. Layne, etc., Co., 241 U.S. 257, 258, 36 S.Ct. 585, 60 L.Ed. 987; Sadler v. Pennsylvania Refining Co., D.C., 33 F.Supp. 414, 419.

The petition, from paragraph 6 to paragraph 12, both inclusive, discloses as full and as complicated a title to land as could be possibly expected in an action of revendication of title to real property. The plaintiff claims from an ancestor through General Land Office entry dated in 1850 (paragraph 4); the plaintiff then alleges the defendant to derive from an allegedly voided probate sale of the year 1837 (paragraph 7); all the transactions of a century are put in review. Statutes of limitation obviously come into play as well as mutual estoppel and warranties, and all are interpleaded (paragraphs 9, 10, 11 and 12). No better proof that the action is one in revendication can be offered than to quote the second paragraph of the two paragraphs comprising the prayer (the first paragraph being the usual and normal prayer of a petition seeking the nullity of a judgment): "The said judgment to be in favor of petitioner, recognizing the paramount title to said property vested in the Estate of Isaac Griffith, by virtue of the United States Land Patent Number 984024, dated August 20, 1926, issued in conformation of Cash Certificate of Entry Number 5129, issued to Isaac Griffith, of date May 17, 1850, and allowed finally, by the Commissioner of the United States General Land Office, by letter dated February 28, 1899, and October 14, 1925; and petitioner further prays for all general and equitable relief and for costs."

That the petition classifies clearly as an action in revendication of title to real property is shown by the definition of this action by the Supreme Court of Louisiana in the following cases: McKenzie v. Bacon, 38 La.Ann. 764, 765 (an action for the dissolution of a private sale of immovable property); Thompson v. Calcasieu Trust & Savings Bank, 140 La. 264, 72 So. 958 (an action to set aside an existing mortgage against real estate); Erskine Heirs v. Gardiner, 166 La. 1098, 118 So. 453 (an action to annul confirmations of title); Viley v. Wall, 154 La. 221, 228, 97 So. 409 (an action to annul sale of property on foreclosure of mortgage under order of seizure and sale); Scott v. Howell, 177 La. 137, 148 So. 6 (a petitory action); Williams' Heirs v. Zengel, 117 La 599, 42 So. 153 (action of jactitation).

Therefore, the next point to decide of the motion to dismiss is whether or not the state district court of St. Landry Parish has jurisdiction ratione materiae of an action seeking the revendication of title to real property located in Avoyelles Parish.

The Louisiana Code of Practice, Part II (Containing Rules to be Observed in the Prosecution of Civil Actions), Title 1, Chapter 2, Section 2, "Before What Tribunals Actions Are To Be Brought," has for its first two articles Nos. 162 and 163, reading as follows:

"162. It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicile or residence, and shall not be permitted to elect any other domicile or residence for the purpose of being sued, but this rule is subject to those exceptions expressly provided for by law."

"163. In action of revendication of real property * * * the defendant may be cited, whether in the first instance or in appeal, either *within the jurisdiction where the property revendicated * * * is situated or found,* though he has his domicile or residence out of that jurisdiction, or in that where the defendant has his domicile, as the plaintiff chooses; provided, that all judgments rendered in such cases shall only be operative up to the value of the property proceeded against, and not binding for any excess over the value of the property in personam against the defendant." (Italics supplied.)

The latter article of the Code of Practice has had long and repeated interpretation supporting it just as it reads. Scott v. Howell, 177 La. 137, 148 So. 6; Thompson v. Calcasieu Trust & Savings Bank, 140 La. 264, 72 So. 958; Smart v. Bibbins, 109 La. 986, 34 So. 49; Erskine Heirs v. Gardiner, 166 La. 1098, 118 So. 453; Viley v. Wall, 154 La. 221, 97 So. 409; Williams' Heirs v. Zengel, 117 La. 599, 42 So. 153; Weaver v. Atlas Oil Co., D.C., 31 F.2d 484, under (3); Young v. Upshur, 42 La.Ann. 362, 7 So. 557, 21 Am.St.Rep. 381.

358

■ Therefore the district court of the parish of St. Landry has no jurisdiction of this subject matter, the subject matter being an action in revendication of title to real property which property is not located in St. Landry parish.

Must we dismiss the suit because, the St. Landry parish District Court having no jurisdiction, it follows that this federal court has none on removal, and is this true even though this federal court might have had jurisdiction had the suit been initially brought here?

■ What we said in the case of Abraham Land & Mineral Co. v. Marble Savings Bank, D.C., 35 F.Supp. 500, 501, was not original but becomes applicable again: " * * * We believe the rule is well established to the effect that all points as to state jurisdiction and venue, both as to subject matter and person, may be raised after removal of a case from the state court to the federal court; see the following cases: Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517; Courtney v. Pradt, 196 U.S. 89, 25 S.Ct. 208, 49 L.Ed. 398; Cain v. Commercial Publishing Co., 232 U.S. 124, 34 S.Ct. 284, 58 L.Ed. 534; Lambert Run Coal Co. v. Baltimore & O. R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671; General Investment Co. v. Lake Shore & M. S. R. [Co.], 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244; Southern Lands, Inc., v. Henderson, D.C., 24 F.Supp. 835."

Therein we also quoted from Lambert Run Coal Co. v. Baltimore & O. R. Co., cited above: " '* * * If the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction. Courtney v. Pradt, 196 U.S. 89, 92, 25 S.Ct. 208, 49 L.Ed. 398; American Well Works v. Layne (etc.), Co., 241 U.S. 257, 258, 36 S.Ct. 585, 60 L.Ed. 987.' " 35 F.Supp. at page 503.

Our Circuit Court said the same thing in Hogue v. Stricker Land & Timber Co., 69 F.2d 167.

The Federal Rules of Civil Procedure have left untouched this controlling rule of practice already established by the courts: Rule 81(c), 28 U.S.C.A. following section 723c; Rule 82, 28 U.S.C.A. following section 723c.

Counsel for plaintiff, who is now seeking to remand this case, urges strongly to our attention what we said in the case of Abraham Land & Mineral Co. v. Marble Savings Bank, D.C., 35 F.Supp. 500. There is a factual difference existing between the cited case and the instant case. In the cited case the petition pretended to be a petitory action, but in substance, after analysis, we held it to be an action in nullity of judgment, and of the judgment of another court; in the instant case, the plaintiff pretends to be seeking the nullity of a judgment (of the court where the action is filed) and we declare his action in substance to be one in revendication of title to real property. One is the converse of the other; and there is no value to plaintiff's contention.

However, the Abraham Land case, under headnote 8, is direct authority on the point that the federal court to which a state action has been removed is compelled to analyze the petition in the state court and conclude what it is in reality, as compared to what it is in pretension.

■ The point is made on jurisdiction that the petition outlines the administration of a succession in the district court of St. Landry and, accordingly, the res should be left with the state court. But the ex parte judgment (outlined in paragraph 6 of the petition) is a concluded finding and is, merely, the placing in possession of the sole alleged heir. At the time of the filing of this suit, the proceeding was completed. There never was an administration of the property of the succession; there is none now. Therefore we must conclude, because of this status, that the action is removable to the federal court, and the request made that the suit should be remanded to the state court because it forms part of a succession under administration must be rejected. Cf. McCrory v. Harp, D.C., 31 F.Supp. 354, and cases cited therein.

Since it is urged in the motion to remand, it is necessary to discuss the alleged sole and inherent jurisdiction of the district court of St. Landry Parish to pass on the petition for the nullity of the judgment of the district court of that parish. Articles 605 to 607, both inclusive, of the Code of Practice of Louisiana, since the judgment sought to be nullified is not apparently vicious because of form, indicate particularly the sole jurisdiction of the St. Landry Parish district court. But, as stated before, since the substance of the petition is for plaintiff to be declared the owner of cer-

tain property and the defendant to be declared not the owner of this very property, the prayer for the nullity of the ex parte judgment must be totally ignored. It is purely a screen to reach the real purpose of the plaintiff—the revendication of title to real property. We find that the nullity of judgment cannot be the predicate for an action. It dwindles to a mere supposed link of title in the action for revendicaton—a weak link at that, because it is ex parte in character (self-declarative of heirship).

The motion by plaintiff to strike, under authority of Rule 12(f), certain averments and paragraphs of defendant's motion to dismiss is overruled and denied.

The motion to remand made by plaintiff is denied.

The motion to dismiss made by defendant is sustained, and judgment will be signed accordingly.