233 So.2d 369 (1970)
Sam Martin POWELL
v.
Burke E. CARTER et al.
No. 7925.
Court of Appeal of Louisiana, First Circuit.
March 9, 1970.
Rehearing Denied April 13, 1970.
Writ Refused June 8, 1970.
*370 Joseph A. Gladney, Baton Rouge, for appellant.
Breazeale, Sachse & Wilson, by Victor A. Sachse, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Defendants appeal from the judgment of the trial court annulling their executory proceeding affecting property owned by plaintiff in the capacity of third party possessor. The judgment also set aside defendants' purchase at the public sale, ordered the mortgage foreclosed upon canceled from the public records, and declared plaintiff owner of the 15 acre tract of land involved.
The principal issues are whether the executory proceedings were null because (1) appellants were not holders of the mortgage notes but had paid them on behalf of the mortgage debtor, and (2) appellants did not establish their alleged acquisition of the mortgage notes by authentic evidence. We find no error in the results reached by the trial court and affirm its decision.
In 1951, Sanford Hearns sold the subject 15 acre tract of land to plaintiff, Samuel Martin Powell, for $375.00. For unknown reasons, the transaction was not recorded until September 4, 1957. In 1956, Hearns mortgaged a tract of land, including the 15 acres sold to Powell, to Henry K. Simmons to secure payment of five promissory notes in the sum of $300.00 each, all paraphed for identification with the mortgage. The mortgage was duly recorded April 13, 1956. Appellants, the nephew and niece by law, respectively, of Hearns, claim to have purchased the notes through Simmons' daughter and agent, Mrs. Louise Sibley, on February 26, 1957, prior to their maturity, for the sum of $1,613.01. The notes, payable to the order of Henry K. Simmons, contain no endorsement to appellants. A receipt attached to the notes recites:
"Rec. of Estella Carter and Thelma Primus sum of $1613.01 paid on Sanford Hearn's note. Paid in full.
 H. K. Simmons
 Mrs. J. C. Sibley"
The name Thelma Primus, appearing on the receipt, is scratched out in pencil.
Defendants jointly acquired the property at foreclosure sale on July 11, 1962. The sheriff's deed to appellants was recorded July 16, 1962. By act of donation executed and recorded July 17, 1962, appellant Burke E. Carter, transferred title to his wife, Estella Primus Carter, as her separate and paraphernal property.
Plaintiff, a virtual illiterate, testified he was unaware of any dispute concerning his title until his proffer of 1962 taxes was refused by the tax collector on the ground plaintiff did not own the property in question. He then secured the assistance of his mother, Gertrude Powell, because she was more knowledgeable in business matters. Plaintiff acknowledged receipt of a letter from an attorney advising that he must either accept the return of the price paid for the property or be subject to a foreclosure proceeding.
In substance Gertrude Powell testified she was unaware of any title complication concerning her son's property until after the foreclosure sale. She admitted reading the attorney's letter received by plaintiff but did not understand it to involve subject property. She also admitted seeking legal *371 advice in plaintiff's behalf and receipt of a letter dated April 5, 1963, from counsel she retained but took no further action because the communication indicated the title was in good order. She was present when Burke E. Carter offered plaintiff $375.00 for the property in disupte.
Thomas Primus, nephew of Hearns and brother of defendant Estella Carter, stated that Hearns incurred a $100.00 debt to Simmons in addition to the $1,500.00 evidenced by the mortgage and notes. He also stated that when Hearns failed to pay $10.00 monthly installments on the $100.00 loan, Simmons decided to foreclose the mortgage. Primus further stated that when Hearns was advised of Simmons' intention to foreclose, Hearns requested Primus to seek help from Primus' sister, Estella Carter and her husband. Primus then requested defendants to pay off the place for Hearns. Together with his sisters, Estella Carter and Hazel Dean, Primus went to Simmons' home where Estella Carter allegedly purchased the notes. He conceded the notes were not due when the transaction took place. In addition, he stated he took care of Hearns who was so old he could not attend to his own affairs. He also stated he informed plaintiff's mother of the pending foreclosure proceedings.
Hazel Dean's testimony is that she accompanied her sister Estella to a financial institution from which Estella withdrew $1,600.00 to purchase the notes held by Simmons. She declared that she accompanied Estella and Thomas to Simmons' home where the notes were purchased. She also stated that after the foreclosure sale, Hearns paid rent to Burke and Estella Carter.
Estella Carter's testimony is substantially the same as that of her sister, Hazel. She further stated she does not consider the property her separate property notwithstanding the purported donation.
Burke Carter's testimony is simply that he instructed his wife to buy either the notes from Simmons or the property from Hearns. He also averred Hearns paid him rent following the foreclosure.
It is conceded the transaction involving the mortgage notes was concluded through Simmons' daughter, Louise Sibley. Mrs. Sibley first testified that Estella Carter and Hazel Dean wanted to purchase the notes. Later she asserted the transaction was a pay off of the notes.
In resolving the issue whether the notes were purchased or paid, the trial court declined to receive parol evidence offered by defendants to establish the transaction as a sale rather than payment. The rejected testimony, however, appears of record under a proffer of testimony pursuant to LSA-C.C.P. Article 1636. The lower court excluded the proferred evidence on the ground parol evidence was inadmissible to vary the terms of the written receipt which characterized the transaction as a payment of the notes.
Appellants complain that the trial court erred in (1) rejecting the proffered parol testimony to show a purchase of the notes; (2) failing to hold that defendants did in fact purchase the notes; (3) annulling the foreclosure sale upon finding the notes were in fact paid and that appellants produced no authentic evidence of their acquisition of the mortgage notes; (4) rejecting defendants' plea of prescription of one year as provided by LSA-C.C.P. Article 2004, and (5) canceling appellants' mortgage covering the acreage purchased by plaintiff.
In excluding the parol evidence offered by appellants, the trial court erred. A receipt for money paid is not conclusive between the parties and parol evidence may be received to contradict or explain such a document. State ex rel. Moulin v. Ideal Savings & Homestead Ass'n, La. App., 178 So. 521; Johnson v. New Orleans Electric Engineering, La.App., 179 So. 121. Under the circumstances, the error of the trial court in rejecting such evidence is a matter of no moment. The lower court's *372 reasons for judgment indicate that he did not consider the parol testimony. It further appears that the trial court was of the opinion that even if he considered the rejected evidence, it did not establish a purchase of the notes. We have considered all of the testimony, including that appearing by defendants' proffer, and concur in the conclusion the notes were paid rather than purchased. The receipt so states in unmistakable language. The clear import of Mrs. Sibley's testimony is that the notes were paid, not purchased. It is significant that the notes were not endorsed to the alleged purchaser, Estella Carter. It is to be reasonably inferred from the testimony of Thomas Primus that he was acting as agent for his uncle, Sanford Hearns, and had Hearns' best interest in mind. Primus initially testified he requested his sister to pay off the notes. His later assertion that the notes were purchased contradicts his former statement. The testimony of Estella Carter, Hazel Dean and Thomas Primus conveys the impression that as relatives of Hearns they were looking after his interests. If so, it was not in Hearns' interest for the parties to purchase the notes before they were due, ostensibly to save the property from foreclosure and then subsequently foreclose the property themselves. Apparently the trial court placed little credence in their testimony. We find no error in this conclusion. Neither do we find error in the conclusion that the notes were paid and the foreclosure proceedings instituted upon an extinguished indebtedness.
Plaintiff was not the mortgagor debtor. Having purchased property subject to a mortgage, without having assumed the mortgage, he was a third party possessor. The crucial question, apparently res nova, is whether the validity of an executory proceeding may be attacked, for lack of proper authentic evidence, after the sale by a third party possessor who has not acquiesced in the sale.
To proceed by executory process, a plaintiff must produce the authentic evidence necessary to prove his right to enforce the mortgage or privilege by executory means. This includes any judgment, order, judicial letter or authentic act necessary to complete the proof of plaintiff's right to executory process. LSA-C.C.P. Article 2635(3).
It is conceded defendants did not produce authentic evidence of the alleged transfer of the notes from Simmons.
The rights of a third party possessor whose property is seized in an executory proceeding are stated in LSA-C.C.P. Article 2703, as follows:
When property sold or otherwise alienated by the original debtor or his legal successor has been seized and is about to be sold under executory process, a person who has acquired the property subject to the mortgage or privilege thereon and who has not assumed the payment of the indebtedness secured thereby may:
(1) Pay the balance due on the indebtedness, in principal, interest, attorney's fees, and costs;
(2) Arrest the seizure and sale on any of the grounds mentioned in Article 2751, or on the ground that the mortgage or privilege was not recorded, or that the inscription of the recordation thereof had perempted; or,
(3) Intervene in the executory proceeding to assert any claim which he has to the enhanced value of the property due to improvements placed on the property by him, or any prior third possessor through whom he claims ownership of the property. This intervention shall be a summary proceeding initiated by a petition complying with Article 891.
In addition, as defendant in an executory proceeding, a third party possessor may enjoin the sale when the debt secured by the mortgage has been extinguished, or is legally unenforceable, or if the legal requirements for bringing an executory proceeding have not been followed. LSA-C.C.P. Article 2751.
*373 Admittedly, Tapp v. Guaranty Finance Company, 158 So.2d 228, decided by this court November 12, 1963, and League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762, rendered by the Supreme Court February 12, 1968, do not per se deal with attacks on executory proceedings themselves. Neither do they consider the rights of a third party possessor as distinguished from a mortgage debtor. Nevertheless, it is the clear import of the cited authorities that noncompliance with the provisions of LSA-C.C.P. Article 2635 renders an executory proceeding absolutely null and void. This interpretation accords with the principle that executory proceedings are a harsh remedy conferring special privileges, therefore, it is stricti juris. This construction is also compatible with the established rule that unconscionable and inequitable judgments will not be enforced by the courts of this state. Tapp and League Central, above, held that a mortgage debtor could attack a deficiency judgment on the ground that it was based on executory proceedings void for procedural defects even though the property had been acquired by a third party purchaser. We believe the cited decisions make it equally clear that where such nullity exists, all proceedings dependent thereon for validity are likewise null and void.
An apparently contrary result was reached by our brothers of the Fourth Circuit in Jambois O. & M. Machine Shop, Inc. v. Dixie Mill Supply Co., Inc., 218 So. 2d 672, decided January 6, 1969, subsequent to the decision in League Central, above. We also note the comment on Jambois, above, appearing in Louisiana Law Review, Volume 30, Page 307, February, 1970, which seemingly approves the result reached in Jambois. We likewise note Jambois does not cite League Central but relies on White Motor Co. v. Piggy Bak Cartage Corporation, La.App., 202 So.2d 294, which was expressly overruled by League Central, above. However, Jambois is distinguishable in that estoppel was therein found by virtue of the mortgage debtor's acceptance of a portion of the proceeds from the sale. It appears Jambois left open the question of what the result would have been but for this circumstance. It is also noteworthy that the comment in Louisana Law Review, above, appears contrary to the holding in League Central, in that the commentator suggests the mortgagor should be considered to have waived defenses not tendered in the executory proceedings because the mortgagee's security could become impaired during the intervening period. Such a result seems unlikely where immovables are concerned. The commentator then points out that present liberal procedural rules require that proceedings not be set aside for "insignificant procedural defects." Here the defect does not concern a particular procedural step in an action. It relates to the basis or foundation of a creditor's right to proceed against a debtor in an unusual manner. It is so fundamental that noncompliance vitiates the creditor's right to proceed. A matter of such vital import, in our judgment, is more than a mere procedural defect.
In Doherty v. Randazzo, La.App., 128 So.2d 669, our brothers of the Fourth Circuit held a mortgage debtor could, in a subsequent proceeding, directly attack foreclosure proceedings which were null for procedural defects where the property was still in the hands of the foreclosing creditor who was responsible for the irregularity.
We believe Tapp and League Central, above, are decisive of the issue before us. We are of the further view that the principles established in Tapp and League Central, above, apply with equal force to the third possessor whose rights are adversely affected by a null and void sale held under executory proceedings.
In Tapp, above, a mortgage debtor filed suit on July 28, 1960, to enjoin garnishment of his wages and to annul a deficiency judgment rendered June 21, 1957. The alleged nullity was based on failure to comply with the provisions of LSA-C.C.P. Article 2635(3). Plaintiff Tapp purchased an automobile giving a promissory *374 note to Leland Mims Used Cars who endorsed the note and transferred same to Guaranty Finance Co., Inc. Guaranty foreclosed and sold the mortgaged vehicle by executory process, with appraisement. The sale did not discharge the indebtedness and Guaranty in due time obtained a deficiency judgment against Tapp. Thereafter, Guaranty and one Elmer A. Uffman transferred the deficiency judgment to Uffman who sought to garnish Tapp's wages. On July 28, 1960, Tapp attacked the garnishment suit on the ground it was predicated on executory proceedings that were null for failure to comply with LSA-C.C.P. 2635(3). We held the garnishment proceeding and deficiency judgment sued upon in Tapp to be null and void stating:
"The executory proceeding was null on its face and the deficiency judgment rendered subsequently and grounded on the null executory proceeding, is likewise null. The Legislature in LSA-R.S. 13:4106 has expressed the strong public policy that deficiency judgments are prohibited except in cases where the sale has been made with legal appraisement. An illegal and null order for executory process cannot serve as the basis for a legal appraisal and sale, though, logically, a legal sale under executory process could contain an illegal appraisal."
The court in Tapp, above, then considered the only real issue to be whether the mortgagor's right to annul was prescribed pursuant to LSA-C.C.P. Article 2004, which is also relied upon by defendant herein. Article 2004, above, provides in effect that a judgment may be annulled for fraud or ill practice provided the action for nullity be brought within one year of the discovery by plaintiff of the fraud or ill practice.
Tapp then proceeded to review the jurisprudence which held in effect that an absolute nullity is imprescriptible and concluded as follows:
"Therefore, in view of the absolute nullity of the executory proceedings, including the seizure, appraisement and sale of plaintiff's property, which constituted a sale without appraisement, and the subsequent deficiency judgment being in contravention of a prohibitory law, LSA-R.S. 13:4106, supra, it is null and the prescription of one year as set forth in Article 2004 of the Code of Civil Procedure is not applicable to plaintiff's action of nullity herein under the authorities above cited."
The opinion in Tapp notes the holding in Myrtle Grove Packing Co. v. Mones, 226 La. 287, 76 So.2d 305, that executory process is a harsh remedy requiring strict compliance with the letter of the law for validity. The court also observed that Viley v. Wall, 154 La. 221, 97 So. 409, is authority for the rule that a mortgage debtor is not confined exclusively to the relief of appeal and injunction provided by LSA-C.C.P. Articles 2703 and 2751 where the mortgaged property has not passed into the hands of an innocent third party purchaser but is held by the foreclosing mortgage creditor subsequent to the foreclosure sale. In addition, Tapp quotes with approval the following found in Succession of Gilmore, 157 La. 130, 102 So. 94:
"The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable."
Lastly, Tapp, based on the ruling in Phillips v. Bryan, 172 La. 269, 134 So. 88, held that what is done in contravention of a prohibitory law is an absolute nullity not subject to prescription.
In League Central, above, a mortgage debtor attempted to enjoin enforcement of a deficiency judgment on the ground that an antecedent executory proceeding was null because the creditor suing for deficiency judgment had utilized improper authentic evidence in the executory proceeding. Defendant Montgomery had purchased a car for which a mortgage and note were given plaintiff who foreclosed *375 thereon via executory process. The vehicle was sold with appraisal. The deficiency judgment allowed by the trial court was sustained by the Court of Appeal. The Supreme Court granted writs on the ground its refusal to review Tapp and White Motor Co., above, created a conflict in the jurisprudence.
League Central notes that Tapp, which allowed a debtor to attack an executory proceeding, does not make it clear whether the property had passed into the hands of an innocent third party purchaser. It also noted that White Motor Co., above, declined to allow such an attack by the mortgage debtor where the property had in fact passed into the hands of a good faith third party purchaser. The Supreme Court held there appeared to be no reason why the rule announced in Tapp should not be applied where the rights of a third party purchaser would not be jeopardized. The Supreme Court then reversed the judgment of the Court of Appeal and enjoined enforcement of the deficiency judgment stating:
"Our law stipulates the authentic evidence required in order to invoke executory proceedings. C.C.P. Art. 2635. The courts on numerous occasions have held that, without the proper authentic evidence, executory proceedings cannot be had. Miller, Lyon and Co. v. Cappel and Curry, 36 La.Ann. 264; Li Rocchi v. Keen, 242 La. 111, 134 So.2d 893. This follows the general principle set out in Article 12 of the Louisiana Civil Code:
`Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed.'
A creditor cannot obtain a deficiency judgment unless he had sold the property under executory proceedings after appraisal. C.C.P. Arts. 2771-2772; R.S. 13:4106-4107. It should follow that, if improper authentic evidence was filed so as to render the executory proceedings null, then any action based upon the executory proceedings is likewise null. It is realized that exceptions have been made to this rule when the debtor, with proper notice and an opportunity to do so, fails to act promptly and permits the property to be sold to an innocent third party. Even though a sale under such circumstances is a nullity, the courts have taken the position that the stranger to the proceedings should be afforded greatest protection. Nevertheless, the executory process is still null and should not be given effect by allowing a deficiency judgment based upon it. The relator here, the debtor, does not seek to annul the executory proceedings and regain the chattel, but is merely resisting a deficiency judgment by asserting the nullity of the executory process."
In Tapp, above, the court found the executory proceeding was null on its face and the deficiency judgment rendered subsequently and grounded thereon, was likewise null. Tapp bolstered the above finding by noting that null executory proceedings cannot serve as the basis of a legal appraisal, and that a deficiency judgment unsupported by a legal appraisal is contrary to prohibitory law (LSA-R.S. 13:4106), and for this additional reason, the deficiency judgment was absolutely null. However, the real basis for nullity of the deficiency judgment in Tapp, above, is not that it was null because it was based on an illegal appraisal, but rather that the executory proceeding upon which the deficiency judgment was founded was procured contrary to prohibitory law. This same view was expressed by the Supreme Court in League Central, above, wherein the court declined to consider the applicability of LSA-R.S. 13:4106 and instead stated:
"Our law stipulates the authentic evidence required in order to invoke executory proceedings. C.C.P. Art. 2635. The courts on numerous occasions have held that, without the proper authentic evidence, executory proceedings cannot be had. Miller, Lyon and Co. v. Cappel and Curry, 36 La.Ann. 264; Li Rocchi v. Keen, 242 La. 111, 134 So.2d 893. This follows the general principle set out in Article 12 of the Louisiana Civil Code:
`Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed.'"
*376 We note that in League Central the Supreme Court stated the mere presence of a good faith third party purchaser was irrelevant to annulling a deficiency judgment where the rights of a third party purchaser were not jeopardized in any fashion. A different result obtains, however, where the rights of an innocent third party might be adversely affected. After noting former decisions protecting the rights of third party purchasers, the Supreme Court observed in League Central that:
"Even though a sale under such circumstances is a nullity, the courts have taken the position that the stranger to the proceedings should be afforded greatest protection."
The foregoing pronouncements are supported by Viley v. Wall, 154 La. 221, 97 So. 409, in which the Supreme Court held that a mortgage debtor may attack an executory proceeding by means other than appeal or injunction when a third party purchaser is not involved. In so holding, the court stated:
"Defendant herein was both the mortgage creditor who initiated the executory proceedings and the adjudicatee at the sale of the property. Not only is the purchaser charged with the knowledge of the nullity upon which the order was improvidently issued, but he was also responsible for the fatal defect, i. e. failure to produce authentic evidence of the act of mortgage. Therefore we conclude that the record supports a finding that the plea of estoppel is without merit in the instant proceedings."
It is undisputed that foreclosure proceedings involved herein did not comply with the terms of LSA-C.C.P. Article 1635. They are, therefore, absolutely null.
Defendants herein, Burke and Estella Carter, were the foreclosing creditors and purchasers at the sale under executory process. Neither are third party good faith purchasers. Both are charged with knowledge of the nullity of the proceedings and cannot claim the status of a third party purchaser. Viley v. Wall, above. The subsequent donation to defendant Estella Carter by her husband is a matter of no moment under the facts of this case.
Since the nullity of the judgment obtained by defendants via executory proceedings is absolute, the provisions of LSA-C.C.P. Article 2004 are inapplicable. Tapp and League Central, above. If, as held in Tapp and League Central, an absolutely null judgment may be assailed by a mortgage debtor, provided rights of third party purchasers are not infringed upon, we see no reason to deny a third party possessor the same relief. Such a result appears particularly equitable in the case of a third party possessor who is not legally entitled to notice of the executory proceeding. We are of the view that if the proceedings are absolutely null, the nullity may be asserted by all persons whose rights are affected thereby, provided no innocent third party purchaser has acquired intervening rights.
Assuming, as defendants contend, the doctrines of estoppel or laches are applicable herein, we find no reason to apply same against plaintiff. There is no evidence of plaintiff's acquiescence in the judgment under attack herein. The record further convinces us that plaintiff made several attempts to enlist the aid of attorneys but without success until the present action was filed.
Extinguishment of the debt upon which a mortgage is based, extinguishes the mortgage. LSA-R.C.C. Article 3411(4). In view of our determining the notes were paid on Hearns' behalf, we find no error in the judgment of the trial court ordering the mortgage canceled insofar as it affects subject property.
The judgment of the trial court is affirmed at appellants' cost.
Affirmed.