312 So.2d 159 (1975)
Ashton G. PEYREFITTE
v.
Lyle H. HARVEY and Richard W. Jones.
No. 10194.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
Rehearings Denied May 20, 1975.
Writ Refused June 24, 1975.
*160 Lemle, Kelleher, Kohlmeyer & Matthews, Paul B. Deal, New Orleans, for plaintiff-appellant.
Charles E. McHale, Jr., New Orleans, for Trans World Land Title Corp., intervenor-appellant.
Duke & Porterie, John L. Hantel, New Orleans, for defendants-appellees.
Before SARTAIN, ELLIS and BARNETTE, JJ.
BARNETTE, Judge.
This is a suit to annul the seizure and sale by executory process of certain immovable property situated in Ascension Parish. The sheriff's sale in question took place on May 25, 1963. This suit to annul that sale was filed May 3, 1971, some eight years later.
Depositions, affidavits and various other pertinent exhibits were filed and before setting for trial the defendants filed a motion for summary judgment. The evidentiary exhibits were not contested, and there is no genuine issue of material fact.
The motion for summary judgment was sustained and judgment rendered accordingly dismissing plaintiff's petition together with a petition of intervention filed by Trans World Land Title Corporation.[1]
The plaintiff, Ashton G. Peyrefitte, has appealed.
The property in question, two tracts of 270 and 60 acres respectively, was mortgaged by the plaintiff in favor of Charles A. Seybold on May 17, 1959, to secure three promissory notes. The notes were of equal rank in the amount of $12,000 each, and numbered one, two and three. They were payable to the order of the maker and by him endorsed in blank, and thus required no further endorsement for negotiation. They were paraphed for identification with the mortgage, which accurately described the notes making mention of their endorsement in blank. The notes numbered two and three, which are involved here, were subsequently negotiated to Lyle H. Harvey and Richard W. Jones, the defendant-appellees.
The foreclosure proceeding by executory process was filed March 22, 1963. The plaintiff-appellant urges several grounds for setting aside the sale, principally that there was a lack of essential authentic evidence filed with the petition and presented to the judge at the signing of the order directing the issuance of the writ of seizure and sale. Annexed to the original petition was a photographic copy of a duplicate original copy of the mortgage, bearing the certification of the Notary Public before whom it was passed attesting it to be a true copy.[2] Also attached to the petition were photocopies of each of the two mortgage notes upon which the suit was filed.
The original order directed that the property be sold with appraisement as prayed for in the original petition. After receiving notice of the seizure and order of execution, Peyrefitte was concerned about the possibility of a deficiency judgment *161 ultimately being cast against him and had his attorney contact the attorney for the foreclosing creditors to arrange for the sale to be without benefit of appraisement. Accordingly the petition and order were amended to order the sale without appraisal, which was in keeping with the provisions in the mortgage waiving benefit of appraisement. The amended order for sale without appraisement was arranged by telephonic communication and the petition to amend was not actually received and filed in the office of the Clerk of Court until after the amended order was signed. The original order was not specifically recalled or vacated.
There is no serious denial that Peyrefitte was served with copies of all the pleadings and notice of seizure and sale and the petition of intervention.[3] There was some contention to the contrary but finally in the main conceded. The record indicates that the notice of seizure was served April 9, 1963, by domiciliary service and return made. There are some allegations that certain of the services were improper and not received, but there is no evidence to contradict the official returns of service other than his own testimony. Furthermore he admits knowledge of the proceedings and consultation with his attorney relative to possible defensive action. Further, the petitioner admits in his deposition that he did in fact have prior notice of the date, time and place of the sheriff's sale.
On the morning of the day of the sale, May 25, the original note held by co-plaintiff, Harvey, was tendered to the Clerk of Court. Mr. Jones, the other co-plaintiff, for whatever reasons, failed to present his note or file it with the Clerk of Court before the sale. It was later transmitted to the Clerk and received on May 29. Sometime subsequent to this, the Clerk backdated both the original notes to indicate that they were filed on March 22 to coincide with the reception of the photocopies of the notes filed with the original petition for executory process.
The sheriff's deed to complete the judicial sale and transfer was executed on June 25, 1963.
On May 25, 1963, after the judicial sale, Harvey and Jones went personally to both tracts to see the two surface tenants to notify them of the change in ownership and to arrange for them to continue leasing their respective tracts. Thereafter new annual leases were executed dating from the termination of the lease in force at the time of sale and these two leases have been renewed each year since.
There can be no serious denial that the executory process culminating in the judicial sale of the property was not in strict conformity with codal requirements. The mortgage creditors procured an order of seizure and sale by executory process without first presenting to the judge the original notes and authentic copy of the mortgage certified by the Clerk of Court. A photographic copy of the duplicate original mortgage, certified by the Notary Public before whom it was executed, was presented with the petition. The mortgage was in authentic form and the photocopy presented has not been denied as a true and exact reproduction of the original. Photographic copies of the notes were presented with the petition. There has been no denial that they were true copies of the originals, properly paraphed and identified with the mortgage. One of the original notes was filed in the record on the day of the judicial sale, prior to the sale. The other note was filed four days later, approximately a month before the execution of the sheriff's deed. This was, to say the least, a procedural irregularity not sanctioned by CCP Arts. 2634 and 2635.
*162 Peyrefitte did not attempt to enjoin the sale or appeal the order for executory process, which unquestionably he could have done successfully because of these irregularities in the procedure. With full knowledge of the procedure and with benefit of legal counsel he did nothing to stop the sale more than to have it done without benefit of appraisement. The property has remained in the ownership and possession of the creditor-adjudicatees. No good faith third person's rights are involved. The question then presented for our determination is whether the mortgagor-debtor, eight years subsequent to the sale, can have the sale annulled because of the procedural irregularities which we have above enumerated.
Executory process for foreclosure of a mortgage in Louisiana is an in rem action. Hibernia Bank and Trust Co. v. Lacoste, 190 La. 162, 182 So. 314 (1938). This procedure provides a mortgagee with a fast, inexpensive, and efficient means of enforcing his mortgage. By means of the executory proceeding, he may, ex parte, seize and sell the property without previous citation and judgment. LSA-C.C.P. art. 2631. The essential basis of such procedure is an authentic act importing a confession of judgment. LSA-C.C.P. art. 2635. To take advantage of this remedy it is required that a creditor must submit authentic evidence to "prove his right to use executory process." This requirement includes instruments evidencing the obligation secured by the mortgage or privilege, the mortgage or privilege importing a confession of judgment, and any "judgment, judicial letters, order of the Court, or authentic act necessary to complete the proof of plaintiff's right to use executory process." LSA-C.C.P. art. 2635.
The Courts regard executory process as a harsh remedy and require that a creditor seeking to avail himself of its use strictly comply with the letter of the law. Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So.2d 305 (1954). The rationale upon which this procedure is justified is based on the need to provide a commercially more attractive method for securing real estate loans. As stated by the Court in Margolis v. Allen Mortgage and Loan Corp., 268 So.2d 714 (La.App. 4th Cir. 1972):
"Executory process is an extraordinary procedure, summary in nature, designed to expedite the satisfaction of delinquent negotiable paper in order to render it more acceptable in commerce. Because it is harsh in nature, the Code of Civil Procedure in Articles 2635 and 2636 imposes the requirement that the right to use this process must be supported by certain self-proving documents, which must be accurate in every significant detail and explicit as to their nature and character." (268 So.2d at p. 715)
It has long been settled that every muniment of title and every link of evidence must be authentic. Miller, Lyon and Company v. Cappell, 36 La.Ann. 264 (1884).
The defenses to executory process are an injunction proceeding to arrest the seizure and sale and/or a suspensive appeal from the order directing the issuance of the writ of seizure and sale. General Motors Acceptance Corporation v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953); LSA-C.C.P. art. 2642. In this case the mortgage debtor did neither. He attempted no defense of the action and permitted the adjudicatee to take possession following the sale and remain in possession for eight years before making this judicial protest against the alleged irregularities.
Courts in the past have permitted actions to annul sales under executory process in certain circumstances. As a general rule, once the property is sold to a person other than the mortgagee, or a holder of the note upon whose petition the executory process is ordered, the mortgagor cannot then annul the sale and recover the property because of defects which he might have urged prior to the sale by injunction or appeal. Continental Securities *163 Corp. v. Wetherbee, 187 La. 773, 175 So.2d 571 (1937). An exception to the rule is where the third party either purchases with notice of patent substantial defect (Stapleton v. Butterfield, 34 La.Ann. 822 [1882]) or participates in some type of fraud upon the mortgagor (Viley v. Wall, 154 La. 221, 97 So. 409 [1923]). But where the mortgagee or other instigator of the executory proceeding ends up as adjudicatee of the property at the sale and is still in possession, the mortgagor under certain circumstances may by subsequent direct action, if timely brought, annul the sale, even though he failed to appeal or enjoin the sale. Reed v. Meaux, 292 So.2d 557 (1974) on rehearing;[4] Reid v. Federal Land Bank of New Orleans, 193 La. 1017, 192 So. 688 (1937); Viley v. Wall, supra; Powell v. Carter, 233 So.2d 369 (La.App. 1st Cir. 1970) writ refused, 256 La. 269, 236 So.2d 37; Doherty v. Randazzo, 128 So.2d 669 (La.App. 4th Cir. 1961).
To obtain a judgment of annulment of a sale by executory process the action, if based on "informalities", must be brought within two years of the sale, LSA-C.C. art. 3543, and if based on radical defects, within five years, LSA-R.S. 9:5642. This is the rationale of this opinion which is more fully discussed below.
The Code of Civil Procedure Article 2635 requires authentic evidence of (1) the note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege; (2) the authentic act of mortgage or privilege importing a confession of judgment; and (3) any judgment, judicial letters, order of the court, or authentic act necessary to complete the plaintiff's right to use executory process. The plaintiff shall submit the authentic exhibits mentioned in Article 2635 with his petition. LSA-C.C.P. art. 2634.
The Supreme Court in Reed v. Meaux, supra, distinguished between the failure of a petitioning creditor to supply the requirements under Article 2635, and failure to supply proof of other matters covered by Article 2637, i.e. evidence which need not be authentic.
"The proof of these facts [death of the mortgagor, opening of the mortgagor's succession, and the necessity of appointment of an attorney to represent nonresident defendants] does not depend upon the same rules applicable to proof of the mortgage, the note, or the creditor's right to enforce the mortgage. These latter facts are substantive in character in an executory proceeding. La.Code Civ.P. art. 2002. As such they must be proved by authentic evidence.. . . On the other hand, proof of the death of the mortgagor, that his succession has not been opened, and the necessity for the appointment of an attorney at law to represent the nonresident defendant may be by verified petition or affidavit. La. Code Civ.P. art. 2637. These are defects of form." Reed v. Meaux, supra, 292 So.2d at p. 573.
The Court cited, with apparent approval, Powell v. Carter, supra. In affirming the trial court's judgment annulling the executory proceedings and setting aside the defendant's purchase at the public sale, this Court said in that case:
"Nevertheless, it is the clear import of the cited authorities that noncompliance with the provisions of LSA-C.C.P. Article 2635 renders an executory proceeding absolutely null and void." (233 So.2d at p. 373)
In Powell the note sued on had been paid and the debt on which the mortgage was based was extinguished. Whereas, in this case there is no denial of the indebtedness; the notes are not disputed and there is no denial of the authenticity of the mortgage importing confession of judgment. There is no contention that the holders of the notes did not have a right to *164 foreclose by executory process. There has been no charge of fraud or bad faith.
It is not the factual difference in these respects which distinguishes this case from Powell. It is rather that in Powell the suit to annul was timely brought and the applicability of LSA-R.S. 9:5642 was not an issue. It does not matter that the noncompliance with the provisions of LSA-C.C.P. Article 2635 in Powell involved a moral issue, whereas in this case it does not. In either case the noncompliance strikes the proceeding with nullity and we make no attempt to distinguish between absolute nullity and relative nullity. Under the factual situation in Powell and a concurrence of the requisite conditions in LSA-R.S. 9:5642 our judgment would be the same. The plaintiff's action to annul the "sheriff's deed" is barred by that statute notwithstanding the nullity of the proceeding from which it emanated.
Article 3543 of the Civil Code as amended, provides:
"All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were owners or part owners at the time of making it, and in the event of such ownership or part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication or private sale thereof." (As amended by Acts 1932, No. 231; Acts 1960, No. 407, § 1, effective Jan. 1, 1961.)
LSA-R.S. 9:5642 provides as follows:
"Actions to set aside sheriffs' deeds are prescribed by five years, reckoning from their date. This prescription applies only where the owner knew that the sheriff was proceeding to sell his property and where the purchaser or those claiming under him went into possession under the deed and remained in actual, open, and peaceable possession as owner for five years, and where the purchaser paid consideration for the property which was then paid over by the sheriff to the creditors of the real owner of the property.
This prescription does not apply to any attempted sale of property, not belonging to the defendant in execution, nor does it apply to minors and interdicts."
Both of these are pleaded by the defendants-appellees as a bar to any action of nullity which plaintiff-appellant might have had on account of the alleged defects in the executory proceeding for seizure and sale of his property. They take the position that if the irregularities, which are not denied, were mere "informalities" plaintiff would be barred under Civil Code Article 3543 by the prescription of two years. That if the defects in the executory proceeding were so fundamental in nature as to render the executory proceeding a nullity, the action to annul the sheriff's deed emanating therefrom is barred by the prescription of five years under LSA-R.S. 9:5642.
There is a presumption that all legislative acts are enacted for some definite purpose and the Courts in construing them must endeavor to give an interpretation that will give them effectiveness and purpose, rather than one which makes them meaningless and useless. LSA-C.C. art. 17; Comegys v. Stanolind Oil and Gas Company, 227 La. 657, 80 So.2d 110 (1955); Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 (1952); Malone v. Cannon, 215 La. 939, 41 So.2d 837 (1949); Hoffpauir v. City of Crowley, 241 So.2d 67 (La.App. 3d Cir. 1970); Legros v. Conner, 212 So.2d 177 (La.App. 3d Cir. 1968).
*165 Accordingly we have carefully compared and analyzed Civil Code Article 3543 and R.S. 9:5642 and have reached the conclusion that R.S. 9:5642 was enacted to provide a prescriptive limitation under the conditions enumerated, against actions to annul "sheriff's deeds" on account of defects more serious in nature than mere "informalities" for which a shorter prescriptive limitation is provided in Civil Code Article 3543. Any other interpretation would render R.S. 9:5642 meaningless and of no useful purpose.
It should be especially noted that the Revised Civil Code Article 3543 since 1870 has applied to "any" public sale made by any authorized person, which includes auctioneers, administrators, executors, etc. Since 1960 it has applied also to private sales, whereas R.S. 9:5642 applies only to "sheriffs' deeds".
Originally Article 3543 in the Revised Civil Code of 1870 read as follows:
"All informalities connected with or growing out of any public sale, made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale, after the lapse of five years from the time of making it, whether against minors, married women or interdicted persons."
It was amended by Act 231 of 1932 to read:
"That any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof." LSA-C.C. art. 3543. (As amended by Acts 1932, No. 231)
A comparison shows that originally it simply provided a five year prescription against "all informalities" arising out of any public sale and no exception was made regarding persons under disability. The 1932 amendment amplified the definition of public sales and reduced the prescriptive period to two years and made an exception as to persons under disability, which was left at five years. The further amendment by Act 407 of 1960 extended the terms of the article to include "private sale" under court order, and left the two and five year prescriptive periods unchanged.
Before the Revised Civil Code of 1870 Article 3543 was amended in 1932, the Legislature enacted Act 6 of 1928 which is incorporated into the Revised Statutes as R.S. 9:5642, supra. It is significant that this statute provides a five year prescriptive limitation for "Actions to set aside sheriffs' deeds * * *" under certain well defined and enumerated conditions. This statute would have no purpose and be utterly meaningless if the "actions" contemplated were only those for "informalities" for which the then existing Revised Civil Code Article 3543 already provided the same prescription. The use of the word "actions" without any qualifying or limiting phrase or classification can only be interpreted to mean all actions. This would include actions based on any defect, not merely those of form but also those of fundamental substance. As further evidence of that intent, very specific conditions are listed each connected with the word "and" thus meaning that there must be a concurrence of all of them as a prerequisite to the application of the prescriptive limitation. Furthermore, the last paragraph of the statute further restricts its application to protect minors and interdicts and against attempted sales of property *166 belonging to persons other than the defendant in execution.
After the enactment of this statute (R.S. 9:5642) there then existed a reason for the 1932 amendment of Revised Civil Code Article 3543, specifically, to provide a shorter prescriptive limitation for those actions based on mere "formalities" as distinguished from those based on substantive defects and noncompliance with essential requirements, for which R.S. 9:5642 provided a longer period and limited to sheriff's deeds only.
No other interpretation can, in our opinion, give meaning to both Civil Code Article 3543 and R.S. 9:5642.
The strict requirements of the law with respect to the application of the harsh remedy of executory process are for the protection of the debtor. The obvious purpose is to insure that he will not be divested of his property, given as security for debt, without the fullest protection of the law. In this case no advantage has been taken of the mortgage debtor. He was fully apprised of every step in the procedure from beginning to end. He had legal counsel and must have been advised of the irregularities in the proceeding. To the extent that he procured a change in the order to sell the property without appraisement, it might be said that he participated. He could have enjoined the sale or successfully appealed from the order for executory process. He stood by and permitted the sale to be consummated and then for more than five years knowingly acquiesced in the entire proceeding. To permit him now to annul the sheriff's deed would hold out to other mortgage debtors in similar situations the invitation to wait out an indeterminate time and gamble on the chance that the property might in time greatly increase in value. LSA-R.S. 9:5642, we think, is intended to be a bar to any such practice.
In none of the cases cited do we have an action to annul brought more than five years after the sale. In Reed the irregularities complained of did not, in the final opinion of the Supreme Court, relate to the essential requirements of LSA-C.C.P. art. 2635. In Powell there was no issue involving LSA-R.S. 9:5642.
If, in the case of Reed v. Meaux, the action to annul had been brought more than two years after the sale it could have been dismissed under the authority of R.C.C. art. 3543, because, as the Supreme Court found, the defects complained of were informalities, and not essential in nature. Had it been brought more than five years after the sale there could be no doubt that the prescriptive limitation provided in R.S. 9:5642 could have been applied if all the requisites were met, without the necessity of lengthy discussion of the comparative gravity of the irregularities complained of.
If the enactment of R.S. 9:5642 was not intended to cover situations such as this, i. e. where the defect in the sheriff's deed is substantive as distinguished from mere "informalities", we cannot conceive of any useful purpose it has; for as pointed out above, there was already a provision in our law prescribing a prescriptive bar against actions to annul public sales based on irregularities of less serious import, Revised Civil Code Article 3543. The amendments to that article in 1932 and 1960, reducing the prescriptive limitation for actions to annul any public sale or court ordered private sale for lesser irregularities, namely, those as to form, without repealing R.S. 9:5642, clearly indicates the legislative intent to make a distinction between such actions and those to annul sheriff's deeds based on more substantive defects. Our conclusion is intended to give effect to, rather than to render R.S. 9:5642 meaningless and of no useful purpose, thereby defeating the intent of the Legislature.
It should be emphasized that LSA-R.S. 9:5642 is unlike other prescriptive articles and statutes which operate as a bar to legal action. Other prescriptive bars to legal *167 actions are conditioned only upon the passage of time, such as actions ex delicto, on accounts, on promissory notes and contracts and other personal actions. LSA-C.C. Articles 3536, 3538, 3540, 3542 and 3544.
The prescriptive bar imposed by LSA-R.S. 9:5642 requires in addition to the passage of time, several very specific conditions all of which must concur with the time requirement. These requisite conditions must be affirmatively established. In this respect the statute partakes of the elements of prescription acquirendi causa as well as elements of prescription liberandi causa; and is limited to sheriff's deeds only. It applies to any sheriff's deed and not limited to those in mortgage foreclosure by executory process.
Having found a concurrence of all the prerequisites enumerated in R.S. 9:5642 the application of the prescription there provided was proper and the summary judgment dismissing plaintiffs action was correct.
The judgment appealed is affirmed at appellant's cost.
Affirmed.
ELLIS, J., concurs with written reasons.
ELLIS, Judge (concurring):
Plaintiff herein, Ashton G. Peyrefitte, mortgaged two tracts of ground on May 17, 1959, to secure payment of three promissory notes of even date and equal rank, each in the sum of $12,000.00, and numbered one, two and three. Notes two and three were negotiated to Lyle H. Harvey and Richard W. Jones, who are the defendants herein.
On March 22, 1963, because of non-payment, defendants instituted executory process against plaintiff. To the petition was attached a properly certified copy of the mortgage and photo copies of the two notes held by defendants. Plaintiff was properly served with notice of seizure and with the pleadings filed. At the request of plaintiff's attorney, the order of executory process was subsequently amended by defendants to provide for sale without benefit of appraisement. Plaintiff did have prior notice of the date, time and place of the sheriff's sale.
On the date of the sale, May 25, 1963, the original note held by defendant Harvey was filed with the Clerk of the District Court. The note held by defendant Jones was filed with the Clerk on May 29, 1963.
At the sale, the property was adjudicated to defendants, and the sheriff's deed evidencing the adjudication was executed on June 25, 1963.
Immediately after the adjudication on May 25, 1963, defendants went into possession of the two tracts of land, and have remained in possession ever since. This suit was filed on May 3, 1971, to annul the sheriff's sale to defendants on the ground that the executory proceeding, pursuant to which the sale was made, was an absolute nullity because of fatal defects therein.
All of the foregoing facts appear from affidavits and depositions filed in the record, and are undisputed. Defendants filed a motion for summary judgment based thereon, which was granted, and plaintiff's suit dismissed, by the court below. Plaintiff has appealed.
It is plaintiff's position that, because of defendants' failure to file the original promissory notes with their original petition, there is non-compliance with the provisions of Articles 2634, 2635, and 2636 of the Code of Civil Procedure, particularly Article 2635, which provides:
"The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process to enforce the mortgage or privilege. These exhibits shall include authentic evidence of:
"(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege;

*168 "(2) The authentic act of mortgage or privilege importing a confession of judgment; and
"(3) Any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff's right to use executory process.
"This requirement of authentic evidence is relaxed only in those cases, and to the extent, provided by law."
It is argued that this failure to furnish the authentic evidence required strikes the entire proceeding, including the sale to defendants, with nullity from its inception. It is contended that such a nullity cannot be cured by prescription.
Defendants argue that the defects in the proceeding are not of such a nature as to be fatal thereto, and that the relative nullity arising therefrom is cured by the prescriptions of two and five years, under Article 3543 of the Civil Code and R.S. 9:5642, respectively.
I think it clear that plaintiff is correct in his contention that the executory proceeding was null. In Reed v. Meaux, 292 So.2d 557 (La.1974), the Supreme Court stated that the failure to furnish in authentic form the documents forming the foundation of the suit renders the entire proceeding null under Article 12 of the Civil Code. I interpret this type of nullity, which exists even though it be not decreed, to be absolute in nature.
However, whether the nullity arising from the failure to attach the original notes to the petition be absolute or relative is of no moment in this case. In either circumstance, I am of the opinion that plaintiff can no longer have the sale set aside because of R.S. 9:5642, which provides:
"Actions to set aside sheriffs' deeds are prescribed by five years, reckoning from their date. This prescription applies only where the owner knew that the sheriff was proceeding to sell his property and where the purchaser or those claiming under him went into possession under the deed and remained in actual, open, and peaceable possession as owner for five years, and where the purchaser paid consideration for the property which was then paid over by the sheriff to the creditors of the real owner of the property.
"This prescription does not apply to any attempted sale of property, not belonging to the defendant in execution, nor does it apply to minors and interdicts."
All of the requirements of the above statute are met in this case. Plaintiff knew that his property was going to be sold by the sheriff. The defendants have been in actual, open and peaceable possession of the property for more than five years since the date of the sheriff's deed. Consideration flowed to plaintiff's creditors, who were defendants herein, since the obligation due them by plaintiff, and secured by the mortgage, was satisfied by the sale.
In my opinion, R.S. 9:5642 is remedial in nature. It is designed to protect those who possess as owners a tract of ground acquired by sheriff's deed for the period of time and under the circumstances set forth in the statute. I believe the defendants are entitled to the benefit thereof, regardless of the validity of the proceedings which gave rise to the sheriff's sale.
I therefore concur.
NOTES
[1] The record herein reflects a dispute between Peyrefitte and Trans World Land Title Corporation over the validity of the Trans World contract and the right of Trans World to appear herein on behalf of Peyrefitte. From a judgment adverse to Peyrefitte an appeal was filed. However, this matter has been amicably settled between Peyrefitte and Trans World rendering this issue now moot.
[2] An extra photographic copy of the mortgage was also included being intended to be annexed to the notice of seizure and sale. This was not used and was returned to the attorney.
[3] Omar H. Cheer filed intervention claiming ownership of the note identified as note No. 1 and prayed for recognition thereof and payment out of the proceeds of the sale. After paying costs and a prior mortgage in favor of Texaco, the sheriff paid two-thirds of the balance of the proceeds of the sale to Harvey and Jones. The one-third claimed by Cheer was retained by the sheriff subject to further order of the Court.
[4] This principle of law was recognized in Reed but the action to annul was disallowed for other reasons.